**LOCAL 169, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA**

and

**Local 623, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America**

and

**Local 596, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America**

v.

**TEAMSTERS HEALTH AND WELFARE FUND OF PHILADELPHIA & VICINITY et al.**

Civ. A. No. 69–86.

United States District Court,
E. D. Pennsylvania.

March 22, 1971.

---

Bernard N. Katz, Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., for plaintiffs.

James Leyden, Schnader, Harrison, Segal & Lewis, Edward Davis and James McG. Mallie, Philadelphia, Pa., for defendants.

HIGGINBOTHAM, District Judge.

The plaintiffs, three[1] local unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, instituted the present action against the Teamsters Health and Welfare Fund of Philadelphia and Vicinity (hereinafter referred to as "the Fund"), and the six Trustees and the Administrator of the Fund, seeking a declaration that the plaintiffs are entitled to participate in the selection of Fund Trustees. Jurisdiction is alleged to exist under §§ 301 and 302 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. §§ 185 and 186.[2] The matter is presently before me on cross-motions for summary judgment.

The background facts relevant to the present motions may be summarized as follows:

Over 25 years ago in Philadelphia, Pennsylvania, an association was formed called the Labor Relations Division of Philadelphia Chapter, Pennsylvania Motor Truck Association (hereinafter referred to as "Division"). The Division had been established in Philadelphia in the 1930's for the purpose of having a large number of employers allied together in their negotiations with Truck Drivers and Helpers Local No. 107 (hereinafter referred to as "Local No. 107") of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Its charter was recorded October 4, 1946, as of C.P. No. 6, March Term, No. 2818, with the new name Motor Transport Labor Relations, Inc. (hereinafter referred to as "MTLR").

Over the years, Division and later MTLR and Teamsters Locals Nos. 107, 470 and 929 negotiated a Master Agreement covering the operations of approximately 350 employers engaged in common, contract and private carriage by motor vehicle and employing about 8,500

---

1. At the pre-trial conference held on July 10, 1970, it was stipulated that Local 115, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, one of the original four plaintiffs, would be removed as a plaintiff.

2. The defendants challenge the jurisdiction of the Court under 29 U.S.C. §§ 185 and 186 to consider a suit "which is brought against health and welfare fund trustees, and which seeks court intervention into the internal administration of a trust fund." In light of this Court's disposition of the plaintiff's motion for summary judgment, it seems inappropriate to reach or attempt to fully resolve the difficult question concerning the Court's jurisdiction under 29 U.S.C., §§ 185 and 186.

employees. After the completion of the negotiations of that Master Agreement, the three locals, Locals Nos. 107, 470 and 929 as well as four other Teamster Locals—Locals No. 676 (Camden, New Jersey), 331 (Atlantic City, New Jersey), 312 (Chester, Pa.), and 384 (Norristown, Pa.) negotiated independent contracts patterned after the Master Agreement, the negotiations being with about 750 employers who were not members of MTLR and who employed some 3,000 employees.

It was against this history and background that MTLR and Locals Nos. 107, 470 and 929 entered into a collective bargaining agreement, effective October 9, 1950, calling for the payment, effective January 1, 1952, by each employer of the sum of $1.00 per week for each regular employee for the purpose of furnishing welfare benefits.

In due course, it was agreed by MTLR and the seven locals (Locals Nos. 107, 470, 929, 676, 331, 312 and 384) that they would establish a health and welfare plan which would be self-administered rather than by the purchase of benefits from insurance companies, or from Blue Cross, Blue Shield or the like.

Accordingly, on December 13, 1951, MTLR, acting for and on behalf of all of its member employers, and the seven Locals entered into the Original Declaration of Trust creating Teamsters Health and Welfare Fund of Philadelphia and Vicinity, (hereinafter referred to as "Original Declaration of Trust").[3]

The Original Declaration of Trust provided that the "Trustees shall consist of one or more persons designated by the Division and representing Operators and other employers governed by this Agreement, and an equal number of persons designated by the Union and representing employees." In the preamble to the Original Declaration of Trust, where parties to the agreement are listed, it is provided that the seven local unions entering into the agreement shall

be referred to as "UNION". In examining this language in light of the full text of the Original Declaration of Trust, and in light of the history leading to the creation of the Original Declaration of Trust, I find that the intent of the parties' signatory to the Original Declaration of Trust was to employ the term "UNION" as a reference designating, and limited to, the seven local unions' signatory to the Original Declaration of Trust. I further find that the intent of the clause referred to above, providing that "[t]he Trustees shall consist of one or more persons designated by the Division and representing Operators and an equal number of persons designated by the UNION and representing the employees," was to vest exclusive authority to appoint Trustees, on behalf of employees participating in the Fund, in the seven local unions signatory to the Original Declaration of Trust (hereinafter referred to as "the Founding Locals.")

On June 6, 1952, the Original Declaration of Trust was amended by the Motor Labor Transport Relations, Inc., and the seven Founding Locals. The amendment noted preliminarily that "certain employers and unions, not parties to the [Original Declaration of Trust] have or in the future may have collective bargaining agreements with each other providing for a Welfare Plan and may desire to participate in the Teamsters Health and Welfare Fund of Philadelphia and Vicinity." The amendment then recited that "DIVISION and UNION desire to permit certain of such other employers and unions to participate in the plan under the circumstances and in the manner herein provided." In the amendment of 1952, as in the Original Declaration of Trust, DIVISION was used to designate the members of MTLR. The amendment concluded by providing in paragraph 2:

"WHEREAS, the parties further agree that, with the unanimous ap-

---

3. The Fund was established pursuant to § 302(c) (5) of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c) (5).

proval of the Trustees, any employer and any union having a collective bargaining agreement with each other providing for or permitting a welfare plan in all material respects the same as Teamsters Health and Welfare Fund of Philadelphia and Vicinity, may by agreement in writing become parties to and be bound by the terms of this Agreement; Provided that such union is affiliated with Teamsters Joint Council No. 53, and the collective bargaining agreement between such union and such employer covers operations in the same geographical area or areas as any one of Locals 107, 470, 676, 929, 331, 312 and 384; and Provided, further, that if at any time after becoming parties to this Agreement, any union and employer agree that there shall be contributed or spent for health and welfare benefits a sum in excess of that provided for in the then existing collective bargaining agreements between DIVISION and UNION for such benefits, such union and employer shall automatically cease to be parties to this Agreement, and thereafter such union and such employer, as well as the employes covered by the collective bargaining agreement between them, shall cease to have any right, equity, or interest whatsoever in, and shall no longer be entitled to any benefits whatsoever from, the Teamsters Health and Welfare Fund of Philadelphia and Vicinity."

The question determinative of the present dispute between the parties is whether the 1952 Amendment provided for participation in the selection of Trustees by other than the seven Founding Locals which had signed the Original Declaration of Trust, which were referred to in the Original Declaration of Trust, and in the Amendment of June, 1952, as "UNION". After evaluating the Original Declaration of Trust, the Amendment of June 6, 1952, and the circumstances leading to the adoption of both the Original Declaration of Trust and the Amendment of June 6, 1952, I conclude that the Amendment of June 6, 1952 did not alter the Original Declaration of Trust in providing for participation in the selection of Fund Trustees by other than the seven Founding Locals, referred to as UNION in both the Original Declaration of Trust and the Amendment of June 6, 1952. A careful examination of paragraph 2 of the 1952 Amendment indicates the distinct use of the term UNION (in all upper case letters) in contrast to the term "union" or "unions" in lower case letters.

The plaintiffs assert that it is difficult to ascertain "how plaintiff Unions can under [paragraph 2 of the 1952 Amendment] be allowed to become a party to the agreement and still not be a party to the agreement." I find no irreconcilable conflict in the position of unions like the plaintiffs admitted to participation in the Fund after June 6, 1952. The intent of the 1952 Amendment was to permit participation in the Fund—to the extent of making members of local unions complying with the conditions of paragraph 2 eligible to receive benefits from the Health and Welfare Fund—and to make employers complying with the conditions of paragraph 2 eligible to fulfill the obligations of a collective bargaining agreement "providing for or permitting a welfare plan in all material respects the same as Teamsters Health and Welfare Fund in Philadelphia and Vicinity" to fulfill this aspect of the collective bargaining agreement by making contributions to the Welfare Fund.

In addition to my reading of the Original and Amended Trust Agreements, I find it significant that although Local 169, a plaintiff herein, has been a member of the Fund since August, 1952, the present action seeking to give effect to the allegedly "clear" and "simple" lan-

guage of the Amended Trust Agreement was not instituted until January 14, 1969.[4]

If the language of the Trust is as "clear" and "simple" as plaintiffs contend, then certainly one would expect the plaintiffs, above all others, to have acted on the basis of this clear understanding more resolutely and promptly than the time of filing of the present suit indicates. This delay, while not determinative of the present controversy, is at least a relevant indication that the language of the Trust Agreement is not as clearly supportive of plaintiffs' position as plaintiffs now contend that it is. Further, it is at least inferable that the acquiescence of many years by the other unions is attributable to their understanding that the term UNION, as used in paragraph 2, embraced only the seven founding locals.

The exclusion of the other unions from the selection of Trustees is not necessarily undemocratic or unreasonable from a policy viewpoint. If the unions other than the Founding Locals had decided to participate in Blue Cross or a similar private insurance plan, they would have had no right to demand specific union representation on the Board of Directors of these private plans. In 1952, the other unions had the option of choosing a program in which the seven Founding Locals selected certain trustees or a private health plan like Blue Cross which may have had no specific representation of unions on the policy making board. The plaintiff unions preferred to throw their lot with a health plan administered in part by union representatives, and absent negotiations, they cannot now through litigation modify their original agreement.

In light of the foregoing, the defendants' motion for summary judgment must be granted, and the motion of plaintiffs for summary judgment denied.

---

4. The first record indication of any protest by a plaintiff union concerning participation in the administration of the Fund is a letter of November 26, 1968.