MODERN WOODCRAFTS, INC., Kidde Merchandising Equipment Group, Inc., Hartford Builders Finish Company, Inc., Harry R. Nilson, Kenneth R. Conley, John R. Bartz, Charles Siemer, Peter Milliard, Donald C. Ramsay, Donald M. Jacobson, James D. Ricketson, William P. Fappiano, Kip Lockhart

v.

Paul H. HAWLEY, Howard G. Weiss, Francis DeLuca, V. Gibney Patterson, Robert J. McLevy, John Cunningham, Joseph Barile and David Saldibar as Trustees of the Connecticut State Council of Carpenters State-Wide Pension Plan and Trust.

Civ. A. No. H 80–316.

United States District Court,
D. Connecticut.

Feb. 16, 1982.

**1002**

Emanuel N. Psarakis, Samuel Bailey, Jr., Charles B. Spadoni, Mary T. L. Fisher, Robinson, Robinson & Cole, Hartford, Conn., for plaintiffs.

Maurice T. Fitzmaurice, Lawrence H. Lissitzyn, Reid & Reige, P. C., Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

JOSÉ A. CABRANES, District Judge:

### INTRODUCTION

■ This case concerns the structure and administration of a multiemployer pension benefit plan. It raises issues under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* In particular, it requires the court to consider (1) questions of standing and jurisdiction under the LMRA; (2) the types of claims upon which relief can be granted pursuant to the LMRA; (3) the question of standing under ERISA; and (4) the appropriate scope of the court's pendent jurisdiction in the circumstances of this case. These questions have been raised by defendants' pending motion to dismiss various claims in the Amended Complaint.[1] A proper understanding of the legal issues raised by this motion requires an outline of the parties and the claims involved in the action.

### BACKGROUND

*Parties*

Thirteen plaintiffs bring this action. All of the plaintiffs are engaged, in some way, in the woodwork manufacturing industry. More significant for purposes of this action, all of the plaintiffs are connected, in some

---

1. Where a party submits to the court matters outside the pleadings in support of a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R. Civ.P., the motion is to be treated as a motion for summary judgment, Rule 56, Fed.R.Civ.P., unless the court elects to "exclude" those materials. This motion to dismiss is based in part on the argument that plaintiffs have failed to state a claim upon which relief can be granted and matters outside the pleadings were submitted to the court for its consideration.

The standard for determining whether to exclude such materials is set forth in *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413, 414 415 (5th Cir. 1980) (per curiam). In *Ware,* the Court of Appeals noted that a district court "has complete discretion to determine whether or not to accept any material beyond the pleadings, ... and '[t]his discretion generally will be exercised in terms of whether or not the proffered material ... is likely to facilitate the disposition of the action.'" *Id.* at 415 (citations omitted) *quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (1969 ed.). The Court observed that "'[w]hen [the extra pleading material] is scanty, incomplete, or inconclusive, the court probably will reject it.'" *Id.* (citation omitted).

The material provided in this case is incomplete and inconclusive. Consequently, the court excludes all materials external to the pleadings from its consideration of whether plaintiffs' complaint states a claim upon which relief can be granted.

way, with a multiemployer pension benefit plan called the Woodworkers Pension Plan and Trust ("Woodworker Plan").

Three of the plaintiffs—Modern Woodcrafts, Inc.; Kidde Manufacturing Equipment Group, Inc.; and Hartford Builders Finish Company, Inc. (collectively, "Woodworker Employers")—are woodwork manufacturing companies.[2] The Woodworker Employers make financial contributions to the Woodworker Plan on behalf of their employees, and thereby provide pension benefits for those employees. Amended Complaint, First Count ("AC–I") ¶¶ 43–45 (filed July 7, 1980). From January 1, 1968, until December 31, 1977, however, the Woodworker Employers contributed to a different multiemployer pension benefit fund. AC–I ¶ 31. This was the Connecticut State Council of Carpenters State-Wide Pension Fund ("State-Wide Fund"), which administers the Connecticut State Council of Carpenters State-Wide Pension Plan ("State-Wide Plan"). AC–I ¶¶ 4, 10.

Created by a Declaration of Trust and Pension Plan, effective February 25, 1958, as amended April 1, 1975 and April 1, 1976 ("State-Wide Trust"), the State-Wide Fund was to "provide benefits for eligible employees and to receive contributions from employers in amounts set by collective bargaining agreements between unions and employers who joined the plan." AC–I ¶ 10.

Five employee plaintiffs—Bartz, Conley, Milliard, Nilson, and Siemer—are former members of Local 1717 of the United Brotherhood of Carpenters and Joiners of America ("Local 1717"). They sue on behalf of themselves and all other employees of the Woodworker Employers similarly situated (such employees, collectively, "Woodworker Employees"). AC–I ¶¶ 2, 6.[3] The class action allegations of the Woodworker Employees are not at issue in the present motion.

Four of the plaintiffs—Fappiano, Jacobson, Ramsay, and Ricketson—are so-called "management trustees" of the Woodworker Plan. Three of the employee-plaintiffs—Bartz, Conley and Siemer—are also so-called "union trustees" of the Woodworker Plan. In addition, a final plaintiff, Lockhart, is also a union trustee of the Woodworker Plan. AC–I ¶ 3. Collectively, the union and management trustees of the Woodworker Plan comprise the plaintiff "Woodworker Trustees."

Eight persons are named defendants in this action. All are trustees of the State-Wide Fund. As trustees of the State-Wide Fund, these defendants (collectively, "State-Wide Trustees") administer the State-Wide Plan. AC–I ¶ 4. Four of the defendants—DeLuca, Hawley, Patterson, and Weiss—are "management trustees" of the State-Wide Fund. The remaining four defendants—Barile, Cunningham, McLevy, and Saldibar—are "union trustees" of the State-Wide Fund. *Id.*

### Plaintiffs' Factual Allegations [4]

This case arises from the circumstances which led the Woodworker Employers and

---

**2.** A fourth woodwork manufacturing company, Peerless Woodworking Corporation, is identified by plaintiffs in paragraph one of the Amended Complaint. That company is not listed in either the caption of the Amended Complaint or the Summons which was issued on May 20, 1980. This fact was noted by defendants in their Memorandum of Law in Support of Defendants' Motion to Dismiss at 8 (filed Sept. 22, 1980). In view of plaintiffs' failure to respond to this observation by defendants, the court shall assume that Peerless Woodworking Corporation is not a party to this action.

**3.** Local 1717, which formerly was Local 1941, no longer exists. It has merged into Local 210 of the United Brotherhood of Carpenters and Joiners of America. Local 210 participates in

the State-Wide Fund. AC–I ¶ 9. Current Local 210 members who formerly were members of Local 1717 presumably participate in the Woodworker Plan and not in the State-Wide Plan. AC–I ¶ 45; Stipulation (filed Feb. 11, 1982) (amending AC–I ¶ 9).

**4.** On a motion to dismiss, the court is required to treat as true, and view in the light most favorable to plaintiffs, all well-pleaded allegations in the complaint, *see Miree v. DeKalb County*, 443 U.S. 25, 27 n.2, 97 S.Ct. 2490, 2492 n.2, 53 L.Ed.2d 557 (1977); *California Motor Transport Company v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969), and only if "it appears beyond doubt that the

Woodworker Employees to end their participation in the State-Wide Fund, and to create the Woodworker Plan. More specifically, it concerns an amendment to the State-Wide Trust, which took effect on April 1, 1976, and the action which the State-Wide Trustees took pursuant to that amendment after the Woodworker Employers and Woodworker Employees had withdrawn from the State-Wide Plan.

The Woodworker Employers are woodwork manufacturing companies engaged in the "design and manufacture of cabinets, and fixtures for stores, offices, schools, and other commercial and institutional buildings." AC–I ¶ 18. According to the Amended Complaint, "[n]one of the Woodworker Employers is a general contractor." AC–I ¶ 19. The central allegation is that the State-Wide Fund, to which the Woodworker Employers contributed, and in which the Woodworker Employees participated until December 31, 1977, AC–I ¶ 31, was administered primarily for the benefit of the employers and employees of the general contracting and related construction industries who also participated in the State-Wide Fund. AC–I ¶¶ 57–58.

Two trade associations of employers act as employer co-sponsors of the State-Wide Fund. One is the Associated General Contractors of America, Incorporated ("Associated"); its members are general contractors who erect or alter buildings and other structures. AC–I ¶¶ 14–15. The other is the Connecticut Construction Industries Association, Incorporated ("CCIA"); its members engage in road building, concrete, sewer, utility, excavation, and other related construction businesses. AC–I ¶ 16. No Woodworker Employer "has ever been a member of either Associated or CCIA." AC–I ¶ 20. Indeed, because none of the Woodworker Employers is either a "general contractor" or engaged in "construction" as those terms are defined by Associated and CCIA, no Woodworker Employer is even

eligible for membership in Associated or CCIA. AC–I ¶ 19.

Despite the fact that the Woodworkers Employers and other employers contributing to the State-Wide Fund were engaged in different industries, the Woodworker Employers and Local 1717 agreed, effective January 1, 1968, to join the State-Wide Fund. AC–I ¶ 12. Thereafter, the Woodworker Employers contributed funds to the State-Wide Fund for the benefit of their employees. AC–I ¶¶ 10, 31.

At some point, the Woodworker Employers came to doubt the wisdom of their decision to join the State-Wide Fund. By the terms of the State-Wide Trust, each employer contributed "a fixed dollar amount to the State-Wide Fund for each hour of employment of each of its employees." AC–I ¶ 23. The Woodworker Employers hire carpenters to work full-time for the entire year. AC–I ¶ 32. Most other employers who participated in the State-Wide Fund, however, were either general contractors or engaged in seasonal construction trades. *Id.* These employers hired carpenters to work on only a part-time or seasonal basis. *Id.* Plaintiffs allege that this difference between the nature of the Woodworker Employers' business and the general contracting and construction industries created an adversity of interests between the Woodworker Employers and the other employers contributing to the State-Wide Fund. AC–I ¶ 22.

In 1975, the Woodworker Employers, suspecting that they were making proportionally greater contributions to the State-Wide Fund on behalf of the Woodworker Employees than other employers were contributing on behalf of their own employees, AC–I ¶ 32, requested that the State-Wide Trustees authorize a study of the proportional cost and benefit levels which were being supported by the contributions of the Woodworker Employers. AC–I ¶ 33. Such

---

plaintiff[s] can prove no set of facts . . . which would entitle [them] to relief" may the court dismiss relevant parts of the complaint. *Conley v. Gibson,* 335 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *see also Hospital*

*Building Company v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *Jenkins v. McKeithen, supra,* 395 U.S. at 422, 89 S.Ct. at 1849.

a study was performed, and revealed that the Woodworker Employers' contributions were greater than necessary to fund the benefits of the Woodworker Employees. AC–I ¶¶ 33–34.

In 1976, the Woodworker Employers asked a number of insurance companies to estimate "the annual cost of providing the exact level of benefits provided by the State-Wide Fund, including the cost of amortizing all past service costs for all employees." AC–I ¶ 43. From these inquiries, the Woodworker Employers concluded that the insurance company plans would provide the same level of benefits at substantially less cost than continued contributions to the State-Wide Fund would have imposed. *Id.* As a result, the Woodworker Employers and Local 1717 "bargained to cease making contributions to the State-Wide Fund, effective December 31, 1977, and to establish a new pension plan, the Woodworker Plan, effective January 1, 1978," AC–I ¶ 44. Under the terms of the Woodworker Plan, benefits provided to Woodworker Employees are reduced by "benefits received from, or provided by, funds from the State-Wide Fund." AC–I ¶ 46.

The Woodworker Employers and Woodworker Employees allege that both during and after their association with the State-Wide Fund, the State-Wide Trustees took actions which caused them financial injury. Plaintiffs allege, *inter alia*, that, during their involvement with the State-Wide Fund, the State-Wide Trustees (1) overcharged them for the "normal costs" of the Fund, AC–I ¶ 51(e); (2) charged the Woodworker Employers for substantial administrative costs, "as well as legal and actuarial fees, which should have been borne by the entire State-Wide Fund," AC–I ¶ 51(b); (3) charged the Woodworker Employers with the entire cost of the study of proportional cost and benefit levels, requested by the Woodworker Employers in 1975, the cost of which "should have been borne by the entire State-Wide Fund[,]" AC–I ¶ 51(a); (4) denied the Woodworker Employers representation on the board of trustees of the State-Wide Fund despite the fact that the Woodworker Employers had sought such

representation, AC–I ¶ 21; and (5) treated the State-Wide Fund, sometimes as a unified fund "when it suited their purposes," and sometimes "as two separate funds (one for Woodworker [E]mployees, and one for all others), when that suited their purposes, which purposes were to favor all other employees [*i.e.*, employees other than the Woodworker Employees]," AC–I ¶ 51(f).

Plaintiffs further allege that after they withdrew from the State-Wide Fund, the State-Wide Trustees took action which caused them injury. As of January 1, 1978, the Woodworker Employers ended their contributions to the State-Wide Fund. AC–I ¶ 47. Effective April 1, 1978, the State-Wide Trustees substantially increased the "past service costs" for the State-Wide Fund by increasing the pensions of non-Woodworker Employees from $8.00 for all "past service credits" and "future service credits" to $11.00 for those credits. AC–I ¶ 53. However, at the same time that they increased the benefits of employees other than the Woodworker Employees, the State-Wide Trustees did not increase employer contributions. AC–I ¶ 54.

On February 1, 1980, the State-Wide Trustees cancelled all past service credits, for service before 1968, for all Woodworker Employees. AC–I ¶ 48. The State-Wide Trustees also decided that those Woodworker Employees who, as of December 31, 1977, did not have ten years of "vesting service" with the State-Wide Plan, "would incur a break in service and forfeit all of their pension credits, even though [those] employees continued to work for the Woodworker Employers." AC–I ¶ 49.

The State-Wide Trustees took this action pursuant to an amendment to the provisions of the State-Wide Plan which "provides that if a participating union terminates its participation with respect to a bargaining unit, or if an employer terminates its participation in the fund with respect to a class of employees, the State-Wide Trustees are empowered to honor, reduce, or cancel the terminating employees' [p]ast [s]ervice [c]redits." AC–I ¶ 28. This amendment,

which had become effective on April 1, 1976, AC–I ¶ 29, contains no standards for guiding the State-Wide Trustees in their decision whether to reduce, cancel, or honor past service credits. AC–I ¶ 30. Moreover, plaintiffs allege that other provisions of the State-Wide Plan guarantee (1) that an employee's pension benefits "shall be vested and not forfeitable if he has at least ten [p]ast [s]ervice [c]redits or [f]uture [s]ervice [c]redits," or has been credited with at least ten years in which he worked for 960 hours or more, AC–I ¶ 26; and (2) that, in accordance with applicable law, the rights of all employees and their beneficiaries "to benefits accrued to the date of partial termination of the [State-Wide Plan], to the extent [those benefits are] funded as of such date, shall be nonforfeitable." AC–I ¶ 27.

*Plaintiffs' Legal Claims*

According to plaintiffs, defendants' conduct gives rise to a number of legal claims. First, plaintiffs allege, *see* AC–I ¶ 56, that because the Woodworker Employers were denied representation on the board of trustees of the State-Wide Fund, the State-Wide Fund stands in violation of the guarantee, contained in section 302(c)(5)(B) of the LMRA, 29 U.S.C. § 186(c)(5)(B), that "employees and employers are [to be] equally represented in the administration of [a multi-employer pension benefit] fund." [5]

Second, plaintiffs allege that the amended provisions of the State-Wide Fund, as adopted and as applied, violate section 302(c)(5) of the LMRA. AC–I ¶¶ 57–58; Memorandum in Opposition to Defendants' Motion to Dismiss at 21 (filed Dec. 2, 1980). These provisions allegedly confer discretion upon the State-Wide Trustees—without providing standards for the exercise of that discretion—to cancel the past service credits of the Woodworker Employees. Thus the provisions authorized the State-Wide Trustees to act in an "unfair and discriminatory," as well as "arbitrary and capricious," manner. AC–I ¶¶ 57–58. Moreover, the trustees are alleged to have actually applied the provisions in an "unfair and discriminatory," as well as "arbitrary and capricious," manner. In other words, the provisions of the State-Wide Fund permitted the State-Wide Trustees to operate, and the State-Wide Trustees did operate, the plan for something other than "the sole and exclusive benefit of the employees[,]" as required by section 302(c)(5). Plaintiffs allege, therefore, that the State-Wide Fund is "invalid because it contains defects violating the requirements of [section] 302(c)(5) of the LMRA." AC–I ¶ 55.

Third, the State-Wide Trustees allegedly breached their fiduciary duty to plaintiffs in violation of section 404(a)(1) of ERISA,

---

**5.** Section 302 of the LMRA, 29 U.S.C. § 186, makes it unlawful for employers to pay monies to any employee, group of employees or representatives of employees except in particular situations set forth in the statute. Section 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B), provides such an exception:

(5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That . . . ; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the

employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement[.]

29 U.S.C. § 1104(a)(1).[6] Amended Complaint, Second Count ("AC–II") ¶ 58 (filed July 7, 1980).

Fourth, the State-Wide Trustees allegedly administered the State-Wide Fund for their own unjust enrichment, and to the detriment of plaintiffs, in violation of Connecticut law. Amended Complaint, Third Count ("AC–III") ¶¶ 1, 64 (filed July 7, 1980).

Finally, defendants allegedly breached their fiduciary duty to the Woodworker Employees, "to the detriment of [p]laintiffs," in violation of Connecticut law. Amended Complaint, Fourth Count ("AC–IV") ¶¶ 1, 60 (filed July 7, 1980).

*Defendants' Motion to Dismiss Some of Plaintiffs' Claims*

Defendants have moved, on a variety of grounds, to dismiss some of plaintiffs' claims. *See* Motion to Dismiss (filed Sept. 22, 1980). Defendants contend, first, that the Woodworker Employers and Woodworker Trustees lack standing to sue for alleged violations of section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), *see* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defendants' Memorandum") at 23 (filed Sept. 22, 1980); second, that the court lacks subject matter jurisdiction over plaintiffs' claim that the State-Wide Fund was not operated "for the sole and exclusive benefit of the employees," as required by section 302(c)(5), *see* Defendants' Memorandum at 16; third, that the contention of the Woodworker Employers that they were denied "equal representation" on the board of trustees of the State-Wide Plan fails to state a claim upon which relief can be granted under section 302(c)(5)(B), *see* Defendants' Memorandum at 10; fourth, that the Woodworker Employers and Woodworker Trustees lack standing to sue under ERISA, *see* Defendants' Memorandum at 26; and, fifth, that

because the federal claims of the Woodworker Employers and Woodworker Trustees must be dismissed, the state law claims of these plaintiffs must also be dismissed for lack of a federal claim to which they might be appended, *see* Defendants' Memorandum at 32.

Even if the court were to grant the motion to dismiss in its entirety, however, the claims of the Woodworker Employees under ERISA and Connecticut law would remain.

The court has reviewed the record of this case, the memoranda of counsel, the argument of counsel presented at a lengthy oral hearing on March 16, 1981 on the motion to dismiss, and applicable principles of law. Upon that review, the court finds defendants' arguments to be persuasive only with respect to (1) plaintiffs' claim to equal representation under section 302 of the LMRA and (2) the question of the Woodworker Employers' and Woodworker Trustees' standing to sue under ERISA. Accordingly, the motion to dismiss is granted to this extent only: plaintiffs' claim to have been denied equal representation on the board of trustees of the State-Wide Plan, in violation of section 302 of the LMRA, *see* AC–I ¶ 56, is dismissed and the claims of the Woodworker Employers and Woodworker Trustees under ERISA are dismissed. The motion to dismiss is denied in all other respects.

## DISCUSSION

*Standing of Woodworker Employers and Woodworker Trustees under Section 302 of the LMRA*

■ Defendants argue that the Woodworker Employers and Woodworker Trustees lack standing to sue for violation of section 302(c)(5) of the LMRA. *See* Defendants' Memorandum at 23–25. These

---

**6.** Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), provides as follows:

Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:
  (i) providing benefits to participants and their beneficiaries; and
  (ii) defraying reasonable expenses of administering the plan[.]

plaintiffs, assert defendants, have failed to allege any injury to themselves resulting from violation of section 302. The court disagrees.

Section 302, by its terms, does not indicate who may sue or be sued under section 302(e)[7] for violations of section 302(c)(5). However, as a general rule, courts have permitted both contributing employers and pension fund trustees to challenge alleged violations of section 302. *See Denver Metropolitan Association v. Journeyman Plumbers & Gas Fitters ("Denver Metropolitan Association")*, 586 F.2d 1367, 1371–1372 (10th Cir. 1978) (employers' association); *Employing Plasterers' Association v. Journeymen Plasterers' Protective and Benevolent Society*, 279 F.2d 92, 97–98 (7th Cir. 1960) (employers' association); *Central Tool Company v. International Association of Machinists National Pension Fund ("Central Tool")*, 523 F.Supp. 812 (D.D.C.1981) (H. Greene, J.) (employer); *Talarico v. United Furniture Workers Pension Fund A*, 479 F.Supp. 1072 (D.Neb.1979) (employer); *Raymond v. Hoffman*, 284 F.Supp. 596, 602 (E.D.Pa.1966) (trustees).

In this particular case, the Woodworker Employers and the Woodworker Trustees have each alleged that they have suffered actual injury as a result of the "arbitrary and capricious" character of the rules of the State-Wide Trust. Similar allegations in other cases have provided a basis for seeking relief of the kind sought here. *See, e.g., Valle v. Joint Plumbing Industry Board ("Valle")*, 623 F.2d 196, 201 (2d Cir. 1980); *Lugo v. Employees Retirement Fund ("Lugo")*, 529 F.2d 251, 256 (2d Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); *Central Tool, supra*, 523 F.Supp. at 814.

The Woodworker Employers have claimed that the Woodworker Plan provides for a reduction of benefits received from, or provided by, the State-Wide Fund. AC–I

¶ 46. To the extent that the action of the State-Wide Trustees in cancelling the past service credits of the Woodworker Employees has reduced the amount in benefits which the State-Wide Fund will pay to those employees, that action has also increased the liability, for pension benefits, of the Woodworker Employers to the Woodworker Employees. *See, e.g., Central Tool, supra*, 523 F.Supp. at 814.

The Woodworker Employers have also alleged that their contributions to the State-Wide Fund were greater than were necessary to fund their employees' benefits, AC–I ¶ 34; that they were overcharged for "normal costs," AC–I ¶ 51(e); and that their contributions were charged with a "disproportionate and excessive amount of administrative expenses[,]" AC–I ¶ 52.

In sum, because the Woodworker Employers have alleged injuries to themselves that arguably constitute violations of section 302, they clearly have standing to sue under that statute.

The Woodworker Trustees likewise have alleged the requisite actual injury. In their capacity as trustees of the Woodworker Plan, the Woodworker Trustees arguably have no personal interest—financial or otherwise—that might be injured or could require judicial protection. Their role is to protect from injury the participants in, and beneficiaries of, the Woodworker Plan. *See NLRB v. Amax Coal Company ("Amax")*, 453 U.S. 322, 331, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). The functions of trustees of multiemployer pension funds established under section 302 are to be construed in accordance with the "accumulated settled meaning under either equity or common law" of the term "trustee," *id.*, and it is a settled rule of the law of trusts that a trustee is under a duty to the beneficiary "to take reasonable steps to realize on claims which [the trustee] holds in trust."

7. Section 302(e) of LMRA, 29 U.S.C. § 186(e), provides as follows:

> The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of chapter 6 of this title.

Restatement (Second) of Trusts, § 177 & Comment (a). *See also Prudence-Bonds Corporation v. State Street Trust Company*, 202 F.2d 555, 563 (2d Cir. 1953) (on rehearing) (L. Hand, J.), *cert. denied*, 346 U.S. 835, 74 S.Ct. 47, 98 L.Ed. 357 (1953).

The Amended Complaint alleges that the State-Wide Trustees have diminished the trust corpus of the Woodworkers Plan by violation of section 302. AC–I ¶¶ 51(a); 51(b); 51(f); 57; 58. As trustees of the Woodworkers Plan, the Woodworker Trustees have more than the authority to act to redress that alleged injury; they bear the duty to act. Accordingly, the Woodworker Trustees have standing under section 302. *See Raymond v. Hoffman, supra*, 284 F.Supp. at 600–601 (E.D.Pa.1966).

*Subject Matter Jurisdiction over Plaintiffs' Claim that Defendants Violated the "Sole and Equal Benefit" Provision of Section 302(c)(5) of the LMRA*

In paragraphs 57 and 58 of the Amended Complaint, First Count, all plaintiffs alleged that the State-Wide Trustees took actions toward the Woodworker Employees that were "arbitrary and capricious," AC–I ¶ 57, as well as "unfair and discriminatory," AC–I ¶ 58. As a result, plaintiffs claim, the State-Wide Fund stands in violation of section 302(c)(5) of the LMRA. AC–I ¶ 55. Defendants move to dismiss the allegations of paragraphs 57 and 58 for lack of subject matter jurisdiction. *See* Defendants' Memorandum at 16–22. Defendants' arguments in support of that motion are not persuasive.

Section 302(a) of the LMRA, 29 U.S.C. § 186(a), generally prohibits an employer from making payments to any representative of his employees. However, section 302(c) permits an employer to contribute to an employee benefit trust fund that meets certain statutory requirements. In particular, pursuant to section 302(c)(5), such a fund must be administered

> for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers

making similar payments, and their families and dependents)[.]

Moreover, pursuant to section 302(c)(5)(B), the fund must be administered in such a way that

> the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and *employees and employers are equally represented in the administration of such a fund*, together with such neutral persons as the representatives of the employees and the representatives of the employers may agree upon[.]

(emphasis supplied).

■ Section 302(e) of the LMRA confers jurisdiction upon the federal district courts to "restrain violations of this section[.]" Thus the federal courts have been authorized to ensure that multiemployer pension benefit funds are operated "for the sole and exclusive benefit of the employees[,]" as required by section 302(c)(5). However, the precise scope of that jurisdiction has been a matter of some dispute. The courts have distinguished between the "structure" of a pension fund—that is, the provisions of its constitutive documents—and the actions which the trustees of the pension fund may happen to take pursuant to those provisions. Generally the courts have held that their jurisdiction is limited to a review of the terms and provisions under which the plan has been established. As our Court of Appeals has observed,

> [t]here are numerous holdings that while [section 302] does not give federal courts jurisdiction to examine the propriety of the denial of a pension under the terms of a plan or maladministration by trustees, it does empower them to examine as to the existence of "structural deficiencies."

*Riley v. MEBA Pension Trust*, 570 F.2d 406, 412 (2d Cir. 1977) (citations omitted).

The Second Circuit has adopted the "narrow view" of section 302 jurisdiction. *Lugo, supra*, 529 F.2d at 255. Under that view, "federal jurisdiction is lacking 'where an application of a trust pension plan [is]

involved and the specific requirements of [section] 302(c)(5) are met.'" *Id., quoting Cuff v. Gleason,* 515 F.2d 127, 128 (2d Cir. 1975). Jurisdiction exists, however, where a plaintiff "is challenging not the application of the provisions of the trust in his particular case, but the provisions themselves, which he claims violate section 302(c)(5)." *Id.*

In other words, the court lacks jurisdiction to determine whether the provisions of a pension plan are arbitrary and capricious *as applied to particular plaintiffs.* The court has jurisdiction, however, to determine whether those provisions are unreasonable, or arbitrary and capricious, *per se.* As the Court of Appeals recently observed in a case which challenged the validity of an amendment to the provisions of a pension plan,

> [t]he plaintiffs contended below that the 1966 amendment was arbitrary and unreasonable per se as well as in its application. The assertions of per se unreasonableness sufficiently allege a 'structural defect' . . . to support federal jurisdiction under 29 U.S.C. § 186(e).

*Valle, supra,* 623 F.2d at 203 n.15 (citations omitted).

■ On a motion to dismiss for lack of subject matter jurisdiction, the court must construe the allegations of the complaint broadly, liberally, and in a light favorable to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *New York State Waterways Association, Incorporated v. Diamond,* 469 F.2d 419, 421 (2d Cir. 1972); *Becker v. Beame,* 454 F.Supp. 867, 867 n.1 (S.D.N.Y.1978). The court must read the pleading in its entirety, with any specific factual allegations found in the body of the complaint controlling over formal jurisdictional allegations, *Harary v. Blumenthal,* 555 F.2d 1113, 1115 n.1 (2d Cir. 1977), and with all uncontroverted factual allegations taken as true, *A. T. Brod & Co. v. Perlow,* 375 F.2d 393, 395 (2d Cir. 1967). Accordingly, even if the formal jurisdictional allegations are conclusory or insufficient, but there are facts pleaded in the complaint from which

jurisdiction may be inferred, the motion to dismiss for lack of subject matter jurisdiction need not be granted. *Harary v. Blumenthal, supra,* 555 F.2d at 1115 n.1; *see generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 at 551–552 (1969 ed.).

■ Reviewing the allegations of the Amended Complaint in light of these principles, the court finds that it has subject matter jurisdiction over plaintiffs' claim that the State-Wide Fund contained defects in violation of section 302(c)(5) of the LMRA. Plaintiffs allege that, effective April 1, 1976, an amendment to the provisions of the State-Wide Plan authorized the State-Wide Trustees to reduce, cancel, or honor the past service credits of the Woodworker Employees. AC–I ¶ 29. The amendment allegedly granted such authority to the State-Wide Trustees even though other provisions of the State-Wide Plan made the past service credits of the participating employees non-forfeitable. AC–I ¶¶ 26–27. Moreover, the amendment of April 1, 1976 allegedly contained no standards to guide the trustees in the exercise of the discretion which it conferred. AC–I ¶ 30.

It is reasonable to infer from these allegations that plaintiffs are claiming that the amendment of April 1, 1976 is arbitrary and capricious *per se.* Under the principles set forth by the Court of Appeals, *see Valle, supra,* 623 F.2d at 203 n.15; *Lugo, supra,* 529 F.2d at 255–256, such an allegation is a claim of a "structural defect," and thus is sufficient to establish subject matter jurisdiction under section 302(e).

*The Claim that the Woodworker Employers Were Denied "Equal" or "Effective" Representation on the Board of Trustees of the State-Wide Fund*

■ In paragraph 56 of the Amended Complaint, First Count, the Woodworker Employers allege that they were denied "effective representation" on the board of trustees of the State-Wide Fund, despite their "complaints and repeated attempts to gain membership" on that board. According to plaintiffs, this denial of membership

on the board of trustees violates section 302(c)(5)(B) of the LMRA, which, in plaintiffs' view, "requires representation of all employers' representatives on a pension plan's board of trustees[.]" AC–I ¶ 56. *See also* Memorandum in Opposition to Defendants' Motion to Dismiss at 5–21 (filed Dec. 2, 1980) (claiming "unequal" representation).

Defendants have moved to dismiss this allegation for failure to state a claim upon which relief can be granted. *See* Rule 12(b)(6), Fed.R.Civ.P. They argue that section 302(c)(5)(B) does not confer upon any particular employer or group of employers a right to any representation on the board of trustees of a multiemployer pension fund to which they contribute. *See* Defendants' Memorandum at 10–15. This argument is persuasive.

The chief purpose of section 302 is to prevent "the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." *Arroyo v. United States*, 359 U.S. 419, 426, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959). To ensure that welfare trust funds do not become a union "war chest," section 302(c)(5)(B) requires that the fund be administered in accordance with certain norms, including the rule that "employees and employers [be] equally represented in the administration of [the] fund[.]" *See Amax, supra*, 453 U.S. at 324, 101 S.Ct. at 2794. To guarantee an effective check against union domination of a pension fund's board of trustees, Congress considered it sufficient that the total number of employer trustees equal that of employee trustees. By its terms, section 302(c)(5)(B) requires nothing more. Even though the statute explicitly contemplates the creation of multiemployer funds, it does not specifically provide each contributing employer or sub-class of contributing employers with a right to "equal" or, indeed, to "effective" representation on the board of trustees.

The possible adversity of interests among contributing employers or groups of contributing employers apparently was of no concern to the authors of section 302(c)(5)(B). Indeed, if that section had explicitly recognized the possibility of conflict among employers, and granted a right of equal representation to each employer or sub-class of employers within the employer class, the likely result would be a dilution of the voting strength of the employer class on the board of trustees, leading very possibly to union domination. To construe section 302(c)(5)(B) in the manner urged by the Woodworker Employers could lead to the very result which Congress sought to avoid.

The courts have construed section 302(c)(5)(B) in accordance with its plain language. Plaintiffs have cited no case in which a contributing employer or sub-class of contributing employers was found to have a right to the sort of "equal" or "effective" representation which the Woodworker Employers claim. To the contrary, several cases have held that "[t]he only requirement of [section 302(c)(5)(B)] is that the representation of employers be equal to that of employees. Where the fund covers a number of employers, this does not require equal representation by *each* employer." *Denver Metropolitan Association, supra*, 586 F.2d at 1374 (emphasis in original) (quoting Goetz, *Employee Benefit Trusts Under Section 302 of the Labor Management Relations Act*, 59 Nw.U.L.Rev. 719, 747 [1967]); *see Blassie v. Kroger Company*, 345 F.2d 58, 72 (8th Cir. 1965); *Mechanical Contractor Association v. Huico, Inc.*, 93 L.R.R.M. 2329 (W.D.Wash.1976); *Local 169, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers v. Teamsters Health and Welfare Fund ("Local 169")*, 327 F.Supp. 260 (E.D.Pa. 1971); *see also Sheet Metal Workers' International Association Local 493*, 234 NLRB 1238, 1244 (1978).

For the proposition that a particular group of employers has a right of "equal representation" or "effective representation," plaintiffs rely principally on *Associated Contractors of Essex County, Inc. v. Laborers International Union ("Associated Contractors")*, 559 F.2d 222 (3d Cir. 1977). That case recognized, however, that "not every party contributing to a welfare

and pension fund has a right to select the fund's trustees." *Id.* at 227, *citing, inter alia, Blassie v. Kroger, supra,* and *Local 169, supra.* What *Associated Contractors* holds (and what plaintiffs themselves note in their memoranda) is that, in view of the apparent purpose of section 302, "the equal representation clause is violated by any arrangement which creates the possibility of union domination." *Associated Contractors, supra,* 559 F.2d at 227 (citation omitted); *see Denver Metropolitan Association, supra,* 586 F.2d at 1375 (recognizing general principle, but finding no allegation of union domination in the complaint); *Quad City Builders Association v. Tri City Bricklayers Union No. 7,* 431 F.2d 999, 1003 (8th Cir. 1970) (recognizing general principle).

As in *Denver Metropolitan Association, supra,* the Woodworker Employers allege that the trust agreement imposed unreasonable burdens upon them; they nowhere allege union domination. Plaintiffs have not alleged that the State-Wide Trustees were ever dominated by any union or that absent "effective" representation for the Woodworker Employers, there is a significant possibility that the State-Wide Trustees would become dominated by a union. Even when the allegations of the Amended Complaint are construed in the light most favorable to the plaintiffs, *see Scheuer v. Rhodes, supra,* 416 U.S. at 236, 94 S.Ct. at 1686, it is not possible reasonably to discern such an allegation of union domination.[8]

Plaintiffs' only claim is that by being denied representation on the board of trustees, the "Woodworker Employers could neither participate in nor attempt to influence decisions made by [d]efendant State-Wide Trustees, which decisions ultimately worked to the detriment of [p]laintiff

Woodworker Employers." AC–I ¶ 56. *See* Memorandum in Opposition to Defendants' Motion to Dismiss at 6–21 (filed Dec. 2, 1980). Section 302(c)(5)(B) does not guarantee each contributing employer or subclass of contributing employers a right either to participate in, or to influence the decisions of, a fund's board of trustees. Accordingly, in paragraph 56 of the Amended Complaint, First Count, plaintiffs have failed to state a claim upon which relief can be granted.

*Standing of the Woodworker Employers and Woodworker Trustees under ERISA*

■ In the Amended Complaint, Second Count, all of the plaintiffs join in alleging that the State-Wide Trustees breached their fiduciary duties under ERISA. 29 U.S.C. § 1104(a)(1). Defendants have moved to dismiss the ERISA claims of the Woodworker Employers and Woodworker Trustees for lack of subject matter jurisdiction. They argue that neither of these groups of plaintiffs has been conferred the requisite standing to sue under the terms of ERISA. *See* Defendants' Memorandum at 26–31.

ERISA imposes a duty of "care, skill, prudence, and diligence" on the fiduciaries of the pension benefit plans covered by the statute. 29 U.S.C. § 1104(a)(1)(B). A person is "a fiduciary with respect to a plan to the extent that," *inter alia,* "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. § 1002(21)(A). Fiduciaries are personally liable for any losses to the plan which have resulted from any breach of their duties, and delinquent fiduciaries are subject to "such other equitable or remedial relief as the court may deem

---

**8.** Indeed, no such allegation appears in plaintiffs' memoranda in opposition to defendants' motion to dismiss. Interestingly, plaintiffs' counsel repeatedly has stated that the statute does not guarantee any particular contributing employer or group of employers any direct or indirect role in the selection of employer trustees, *see* Certified Official Transcript of Oral Argument on Motion to Dismiss at 30, 31–32, 33 (filed Nov. 2, 1981); *see also* Plaintiffs' Reply Memorandum of Law at 15 (filed March 23,

1981), while nonetheless complaining that "the Woodworker Employers never had *constructive* or *effective* representation on that board of trustees." *Id.* at 16 (emphasis added). *See also* Memorandum in Opposition to Defendants' Motion to Dismiss at 5–21 (filed Dec. 2, 1980) (claiming "unequal" representation). Plaintiffs' counsel thus virtually concedes that the allegations of the Amended Complaint on the question of representation are inadequate.

appropriate, including removal...." 29 U.S.C. § 1109(a).

Plaintiffs have alleged that the State-Wide Trustees "administer" the State-Wide Plan. AC–I ¶ 4, AC–II ¶¶ 2–5. That allegation has not been challenged. Until now, therefore, it is undisputed that the State-Wide Trustees are fiduciaries within the meaning of ERISA.

ERISA enumerates the proper parties in a suit alleging a breach of fiduciary duty and confers jurisdiction upon the federal courts to decide such actions. 29 U.S.C. § 1132. It provides that "[a] civil action may be brought ... by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [for breach of fiduciary duty]." Federal district courts have jurisdiction to hear actions brought by the enumerated parties. 29 U.S.C. § 1132(e)(1).

Neither the Woodworker Employers nor the Woodworker Trustees fall within any of the four categories of parties given standing to sue by ERISA. The statute defines a "participant" as any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

The Woodworker Employers and Woodworker Trustees have not alleged that they fall within this statutory definition. Nor could they. The statute limits "participants" to present and former employees, and present and former members of employee organizations. As ERISA defines these terms, contributing employers, such as the Woodworker Employers, cannot be either employees or members of employee organizations. *See* 29 U.S.C. § 1002(5) (definition of "employer"); 29 U.S.C. § 1002(6) (definition of "employee"); 29 U.S.C. § 1002(4) (definition of "employee organization"). Similarly, the Woodworker

Trustees were not "participants" in the State-Wide Plan. Several of the Woodworker Trustees also happen to be Woodworker Employees and, *in their capacity as employees*, may once have been statutory participants in the State-Wide Plan. In their capacity as trustees of the Woodworker Plan, however, they are not "participants" in the State-Wide Plan, and cannot have standing as "participants" to sue the State-Wide Trustees for breach of fiduciary duty.

A "beneficiary" under ERISA is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Neither the Woodworker Employers nor the Woodworker Trustees have alleged that they are "beneficiaries" of the State-Wide Plan within the statutory definition. Nor have they alleged that they were "designated by a participant" or entitled, in their present capacities, to benefits "by the terms of" the State-Wide Plan. Absent such allegations neither group may be considered to be "beneficiaries" within the meaning of the statute.

A person is a "fiduciary" with respect to a plan

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

The other persons defined as "fiduciaries" under 29 U.S.C. § 1105(c)(1)(B) are persons designated by "named fiduciaries ... to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." The Woodworker Employers

and Woodworker Trustees have not alleged that they are "fiduciaries" of the State-Wide Fund or that they have ever been so designated by the State-Wide Trustees.

■ In order to have standing to sue under ERISA as a "fiduciary," a party must be (or have been) a fiduciary of the plan whose other fiduciaries are being sued for breach of duty—that is, a party must be (or have been) not merely a fiduciary of any ERISA plan, but rather, a fiduciary of the particular ERISA plan victimized by the alleged breach of fiduciary duty. *See Smith v. Hickey*, 482 F.Supp. 644, 650 (S.D. N.Y.1979). Neither the Woodworker Employers nor the Woodworker Trustees have alleged that they are or were fiduciaries of the State-Wide Fund.

Under the circumstances presented here, neither the Woodworker Employers nor the Woodworker Trustees have standing to proceed under ERISA. *Wong v. Bacon*, 445 F.Supp. 1177, 1183 (N.D.Cal.1977) (Renfrew, J.) ("employers who contribute to employee benefit plans do not fit in any of the four limited categories of plaintiffs in [29 U.S.C. § 1132(e)(1)], the Secretary of Labor, participants, beneficiaries and fiduciaries" [citation and footnote omitted]). *See also Central Tool, supra*, 523 F.Supp. at 814 n.4 (noting dismissal of ERISA claims of former contributing employer for lack of standing).[9]

*Jurisdiction over the State Law Claims of the Woodworker Employers and Woodworker Trustees*

■ All plaintiffs claim violations of Connecticut law. With respect to their state law claims of unjust enrichment and breach of fiduciary duty, plaintiffs allege that "[t]his court has jurisdiction under the doctrine of ancillary or pendent jurisdiction." AC–III ¶ 1; AC–IV ¶ 1. Defendants have moved to dismiss the state law

claims of the Woodworker Employers and Woodworker Trustees for lack of subject matter jurisdiction.

Defendants argue only that because the federal law claims of the Woodworker Employers and Woodworker Trustees must be dismissed, the state law claims of these plaintiffs must be dismissed as well, for lack of a cognizable federal claim to which the state claims may be appended. *See* Defendants' Memorandum at 32–33. The court has already concluded, however, that the Woodworker Employers and the Woodworker Trustees have standing to challenge the provisions of the State-Wide Fund for violation of the "sole and exclusive benefit" clause of section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and that the court has jurisdiction to decide that claim. There is, therefore, a federal claim by the Woodworker Employers and Woodworker Trustees to which their state law claims may be appended. Accordingly, defendants' motion to dismiss those state law claims is denied. *See generally United Mine Workers v. Gibbs*, 383 U.S. 715, 725–727, 86 S.Ct. 1130, 1138–1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

For the reasons set forth above, the Woodworker Employers and Woodworker Trustees have standing to sue for violation of section 302 of the LMRA because each of these groups of plaintiffs has alleged the requisite actual injury. However, the Woodworker Employers and Woodworker Trustees do not have standing to sue under ERISA for breach of fiduciary duty.

Defendants' motion to dismiss is denied with respect to the claims of all plaintiffs—the Woodworker Employers, Woodworker Trustees and Woodworker Employees—of violations of the "sole and exclusive benefit" clause of section 302(c)(5) of the LMRA. The motion is also denied with respect to

---

**9.** At oral argument on defendants' motion to dismiss, plaintiffs' counsel noted that "[t]he question as to whether the employers, as such, have standing under E.R.I.S.A., I'll have to admit is somewhat controversial... [b]ut the *employees* under E.R.I.S.A. clearly have standing to sue there." Certified Official Transcript of Oral Argument on Motion to Dismiss at 27 (filed Nov. 2, 1981) (emphasis supplied). He noted that "... the cases in that area are somewhat against us ..." but argued that "under E.R.I.S.A. there is nothing that says that the employers are precluded as such, there is nothing in the language [of the statute] precluding [employers' standing]." *Id.* at 39. "We do agree that there are court decisions ... that are adverse to this, and I would be foolish if I denied that was the case." *Id.* at 40.

the pendent Connecticut law claims, asserted by the Woodworker Employers and Woodworker Trustees, of unjust enrichment and breach of fiduciary duty.

Defendants' motion to dismiss is granted with respect to the Woodworker Employers' claims of denial of "equal" or "effective" representation under section 302 of the LMRA, stated in AC–I ¶ 56, and the claims by the Woodworker Employers and Woodworker Trustees under ERISA, stated in AC–II.

The claims which have survived defendants' motion to dismiss, as well as the claims of the Woodworker Employees under ERISA for breach of fiduciary duty and under Connecticut law for unjust enrichment and breach of fiduciary duty, shall proceed to trial as soon as possible.

It is so ordered.