R. C. SMITH, Charles Calhoun, Joseph Penot, Martin Hickey, Michael Diprisco, James Hayes, Thomas E. Murphy, Franklin K. Riley and J. Eric May, as Trustees of the R.O.U. Benefits Plan, Plaintiffs,

v.

Martin HICKEY, Michael Diprisco, Nicholas Telesmanic, C. J. Bracco, David Schultze, Allen Taylor, William Ristine, William Steinberg, Bernard Smith, Harvey Strichartz, Joseph Rubin, Phillip O'Rourke, Floyd Hepting, Ralph Baird, as Trustees of the A.R.A.–P.M.A. Welfare Plan and the A.R.A. Pension and Welfare Plan and John Sokolowski, as Administrator of the A.R.A. Pension and Welfare Plans and Paul Anselmo, as the Training Director of the A.R.A.-R.O.U. Training School, Defendants.

No. 79 Civ. 3122 (RWS).

United States District Court,
S. D. New York.

Dec. 19, 1979.

Marchi, Jaffe, Cohen, Crystal & Katz, New York City, for plaintiffs by David Jaffe, New York City, of counsel.

Edwin Steinberg, New York City, for defendants by Lydia Tugendrajch, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs commenced this action against defendants in New York Supreme Court for breach of contract and for an accounting. Defendants removed the action to this court under 28 U.S.C. § 1441. Plaintiffs now move to remand the action to state court pursuant to 28 U.S.C. § 1447(c). A review of the facts underlying this action demonstrates a lack of subject matter jurisdiction

over the claims asserted in the complaint.[1] Therefore, the motion to remand is granted.

A. *Parties and Factual Setting.*

Plaintiffs are trustees of the R.O.U. Benefits Plan (the "ROU Plan"). The ROU Plan is a benefit and welfare trust fund for radio officers established pursuant to a collective bargaining agreement between the Radio Officers Union, United Telegraph Workers, AFL–CIO ("ROU") and employers in the American merchant marine. Defendants are trustees of the A.R.A.–P.M.A. Welfare Plan and of the A.R.A. Pension and Welfare Plan (the "ARA Plans"). These plans are benefit trust funds for radio officers created pursuant to a collective bargaining agreement between the American Radio Association, AFL–CIO ("ARA") and American merchant marine employers. All three plans are funded by contributions received from employers who are parties to the respective collective bargaining agreements. They are maintained in accordance with the requirements of Section 302(c) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 186(c). In addition, defendant Sokolowski is the administrator of the A.R.A. Pension and Welfare Plan, and defendant Paul Anselmo is the training director of the A.R.A.–R.O.U. Training Program.

In January, 1951, the trustees of the ARA Plans voted to establish a training program to provide correspondence and residence training courses for the benefit of ARA members, to be known as the ARA Technology Institute for Maritime Electronics ("T.I.M.E."). On October 4, 1960 and December 1, 1962; the ROU Plan signed contracts with the ARA Plans (the "Contracts") under which it agreed to contribute to T.I.M.E. and under which ROU members became eligible to participate in T.I.M.E. programs.

T.I.M.E. itself is not a Section 302(c) trust. It receives no direct contributions from employers, but rather is funded by

---

1. Plaintiffs have also sought remand on the ground that one of the defendants, Martin Hickey, who is also a plaintiff, does not consent to removal. Because of the absence of jurisdiction, this ground for remand will not be discussed.

contributions from the ROU Plan and the ARA Plans in accordance with the Contracts. T.I.M.E. has no trust assets of its own and has no trustees. Defendants have not disputed plaintiffs' assertion that T.I.M.E. is regulated neither under the LMRA nor under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1001 et seq.

Plaintiffs commenced this suit in New York Supreme Court in 1979, shortly after the ROU Plan terminated its participation in T.I.M.E. Plaintiffs allege that, beginning in 1976, the ARA Plans pursued a course of harassment of the ROU Plan by preventing the trustees of the ROU Plan from participating in setting policies pertaining to the operation of T.I.M.E. The complaint alleges that the defendants denied access to training programs to ROU officers, prevented the ROU Plan from participating in the restructuring of T.I.M.E.'s curriculum, and withheld financial data concerning T.I.M.E. from ROU trustees. Plaintiffs aver that these actions constitute a breach of the Contracts, for which they are entitled to recover damages.

Plaintiffs' second cause of action seeks an accounting of T.I.M.E.'s assets and inventory, which the ARA Plans have allegedly prevented T.I.M.E. from providing.

Defendants have counterclaimed for $200,000 for the averred failure of plaintiffs to make sufficient contributions to the T.I.M.E. program as required by the Contracts.

Defendants urge that federal jurisdiction exists over the claims asserted in the complaint pursuant to Sections 301 and 302 of the LMRA, 29 U.S.C. §§ 185, 186, Section 502 of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1337.[2]

Whether a basis for federal jurisdiction exists which will support removal of an action is determined solely by reference to the allegations in plaintiffs' complaint, and not to those contained in defendants' answer. *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Moreover, claims asserted in a counterclaim can not serve as the basis for a finding of federal jurisdiction. *Coditron Corp. v. AFA Protective Systems, Inc.*, 392 F.Supp. 158, 161 (S.D.N.Y.1975).

### B. *Section 301 of the LMRA.*

Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce or between any such labor organizations . . . may be brought in any district court of the United States having jurisdiction of the parties . . .

29 U.S.C. § 185(a). Defendants argue that this suit should be viewed as one involving the breach of the collective bargaining agreement between ROU and the employers it represents, or as one concerning the breach of a contract between two labor organizations.

■ In order to sustain jurisdiction over an action under Section 301, the action must allege: (1) a violation (2) of a contract (3) between an employer and a labor organ-

**2.** 28 U.S.C. § 1337 provides:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

The Court of Appeals has held,

While 28 U.S.C. § 1337, conferring jurisdiction over actions arising under an Act of Congress regulating commerce . . ., is important when the Act of Congress does not have its own jurisdiction conferring provision, . . . it adds nothing to one that does.

*IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975) (citation omitted). In this case, each of the statutes relied upon by defendants contains a jurisdictional provision. Therefore, the reference by defendants to 28 U.S.C. § 1337 is superfluous. The result reached in this case would not be altered by analysis under the general jurisdictional grant of that statute. *See Garrett v. Time-D.C., Inc.*, 502 F.2d 627 (9th Cir. 1974), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975); *Russo v. Kirby*, 453 F.2d 548 (2d Cir. 1971); *Ciccone v. Waterfront Commission of New York Harbor*, 438 F.Supp. 55 (S.D.N.Y.1977); *Long Prairie Packing Co. v. Midwest Emery Freight System, Inc.*, 429 F.Supp. 201 (D.Mass.1977).

ization or between two labor organizations. *Alvares v. Erickson*, 514 F.2d 156, 161 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); *Maita v. Killeen*, 465 F.Supp. 471, 472 (E.D.Pa.1979). Section 301 has been construed to provide a jurisdictional basis for suits by employers, unions or employees to enforce rights under a collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (alleged unfair labor practice by employer); *National Rejectors Industries v. United Steelworkers*, 562 F.2d 1069, 1074 (8th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 517 (1978); *Leonardis v. Local 282 Trust Fund*, 391 F.Supp. 554 (E.D.N.Y.1975) (claim by employee that pension fund improperly denied him pension). Jurisdiction has also been sustained over actions for breach of contract between two labor organizations. *Local 33, International Hod Carriers v. Mason Tenders*, 291 F.2d 496 (2d Cir. 1961). However, the courts have declined to exercise jurisdiction under Section 301 in the absence of a claimed breach of contract between a union and an employer or between two unions. In *Miller v. Davis*, 507 F.2d 308, 311 (6th Cir. 1974), the court held that Section 301 did not confer jurisdiction over an action alleging improper administration of union trust funds. The court in *Weiss v. Legal Aid Society*, 449 F.Supp. 571, 573 (S.D.N.Y.1978), held that an action for breach of employment contract by an employee who was not covered by a collective bargaining agreement did not fall within Section 301 since that section "confers jurisdiction . . . only when the complaint alleges a violation of an agreement between an employer and a labor organization."

Section 301 also does not extend to suits brought against defendants who are not parties to the contract whose breach is alleged. In *Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421 (1st Cir. 1968), it was held that Section 301(a) did not confer jurisdiction over a suit by pension fund trustees against individuals who had allegedly participated in the illegal looting of the fund. Such malfeasance, the court ruled, could not be construed as a breach of the collective bargaining agreement or of the contract creating the fund, since the defendants were not parties to those contracts. In *Colorado Pipe Industry Employee Benefit Funds v. Colorado Springs Plumbing and Heating Company*, 388 F.Supp. 71, 73 (D.Colo.1975), the court held that Section 301(a) did not grant jurisdiction over a claim by pension fund trustees against a surety which had issued a bond securing payment of an employer's obligations under a collective bargaining agreement.

Defendants contend that plaintiffs' suit alleges a breach of the collective bargaining agreement between ROU and its employers. That agreement requires provision of training facilities and programs to ROU members, and authorizes the trustees of the ROU Plan to expend funds contributed by employers to make these programs and facilities available. Under the agreement, the employers agree fully to "cooperate in the fulfillment" of the training programs and to make contributions for that purpose.

Defendants argue that T.I.M.E. is a benefit plan created in order to fulfill the training requirements of the ROU collective bargaining plan. They claim that since plaintiffs essentially seek to recover for failure of T.I.M.E. to supply training services to ROU employees, as required by the ROU collective bargaining agreement, this suit must be regarded as alleging a violation of the ROU collective bargaining agreement.[3]

However, the complaint does not allege any breach of the ROU collective bargain-

---

**3.** Defendants further point out that the collective bargaining agreement between the ARA and the employers it represents specifically provides that training programs presented by T.I.M.E. will be available to ARA members. T.I.M.E. programs are also described in a booklet published by the ARA Plans in 1979 concerning benefits available under the ARA Plans. This reference to T.I.M.E. in the ARA collective bargaining agreement has no bearing on this court's jurisdiction over this action, however, since plaintiffs do not claim that the alleged wrongful acts of the ARA Plans constitute a breach of this ARA collective bargaining agreement.

ing agreement by either the ROU or the employers whom it represents. The fact that provision of some training programs is mandated by the ROU collective bargaining agreement does not imply that this suit, for breach of the Contracts to purchase such programs through T.I.M.E., necessarily involves a breach of that agreement. It is significant that neither the ROU collective bargaining agreement nor the Declaration of Trust of the ROU Plan requires the trustees of the ROU Plan to purchase training services from any particular source. The trustees are free at any time to discontinue participation in T.I.M.E. and to locate a new source of such services. Resolution of plaintiffs' claims does not turn upon construction of the ROU collective bargaining agreement, but rather requires interpretation of the Contracts under state law.

Moreover, as in *Ulpiano, supra,* and *Colorado Pipe, supra,* the defendants in this suit are not parties to the ROU collective bargaining agreement and owe no duties to the plaintiffs under that agreement. Therefore, even in the wrongful acts alleged may have impaired the performance of that agreement, these allegations would not give rise to a cause of action under Section 301.

This suit also does not involve a breach of contract between two labor organizations, within the meaning of Section 301(a). It is true that the complaint avers that the ARA Plans have breached the Contracts with the ROU Plan for the provision of T.I.M.E. training programs. However, the ROU Plan and the ARA Plans are not "labor organizations" within the meaning of the LMRA. Section 101(5) of the LMRA states:

> (5) The term "labor organization" means any organization of any kind . . . which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

29 U.S.C. § 152(5). It is undisputed that neither the ROU Plan nor the ARA Plans, which are union benefit trust funds, played any role whatsoever in representing em-

ployees in negotiations with employers. Indeed, as required by statute, labor and management are equally represented on the boards of trustees of these benefit trusts, 29 U.S.C. § 186(c)(6).

The absence of a bargaining role distinguishes this case from *Local 33 International Hod Carriers v. Mason Tenders, supra,* 291 F.2d 496 (2d Cir. 1961). There, the Court of Appeals asserted jurisdiction under Section 301(a) over a dispute between two labor representatives flowing from an alleged contract or understanding between them. However, the holding in that case was expressly premised on the representational functions performed by the labor unions who were parties to the alleged contract. *Id.* at 501. Unlike the labor groups considered in that case, the trust funds involved in this case are not "labor organizations" as that term is used in 29 U.S.C. § 152(5). *See also Marriott In-Flite Services v. Local 504,* 557 F.2d 295 (2d Cir. 1977) (union organized under Railway Labor Act is "labor organization"); *Evans v. American Federation of Television & Radio Artists,* 354 F.Supp. 823, 828 (S.D.N.Y.1973), *rev'd on other grounds,* 496 F.2d 305 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974) (collective bargaining agent is "labor organization" within 29 U.S.C. § 152(5).

Since this action does not allege breach of an agreement either between an employer and a labor representative or between two labor representatives, no jurisdiction exists under Section 301.

### C. *Section 302.*

Section 302 of the LMRA prohibits employers from making payments to a labor organization which represents the employees of that employer. 29 U.S.C. § 186(a)(2). Section 302(c), however, provides an exemption:

> (6) with respect to money . . . paid by any employer to a trust fund established by such representative for the purpose of . . . defraying costs of apprenticeship or other training programs . . . . .

29 U.S.C. § 186(c)(6). Section 302(e) provides:

> The district courts of the United States . . . shall have jurisdiction . . . to restrain violations of this section . .

29 U.S.C. § 186(e).

█ The jurisdictional grant of Section 302(e) extends only to claims of structural defects in trusts established under Section 302(c) or to claims that trustees have acted arbitrarily and capriciously in adopting fund regulations. *Knauss v. Gorman*, 583 F.2d 82, 85–87 (3d Cir. 1978); *Reiherzer v. Shannon*, 581 F.2d 1266, 1270 (7th Cir. 1978); *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir. 1977); *Lugo v. Employees Retirement Fund*, 529 F.2d 251 (2d Cir. 1976); *Harris v. Joint Plumbing Industry Board*, 474 F.Supp. 1284, 1287 (S.D.N.Y. 1979); *Blazquez v. New York City District Council*, 463 F.Supp. 727 (S.D.N.Y.1979). For example, in *Nixon v. O'Callaghan*, 392 F.Supp. 1081 (S.D.N.Y.1975), allegations that trustees of a Section 302(c) trust had adopted unreasonable trust rules were held to fall outside the jurisdictional ambit of Section 302(e), since the rules were not alleged to violate any structural requirements of the statute. As the court specified, "Rather, it would appear that the complaint could simply be construed as a claim based upon violation of state fiduciary law." *Id.* at 1087. Accordingly the court remanded the case to state court.

The Court of Appeals has recently ruled that Section 302 does not confer jurisdiction over an action by a pharmaceutical supplier against a Section 302(c) trust fund which allegedly breached its contract to purchase goods and services from the supplier. *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493 (2d Cir. 1977). In *Ader v. Hughes*, 570 F.2d 303 (10th Cir. 1978), the court held that where no violation of Section 302 was alleged, the federal court did not have juris-

diction to interpret the terms of a Section 302 trust for purposes of determining whether the trust required that an umpire be appointed. The court stated:

> We cannot find anything in the LMRA's selective correction of certain abuses in the management of union welfare trust funds that authorizes federal courts to engulf matters of local contract law. . . It then follows that interpretation of a 302(c)(5) trust agreement under state law, apart from the terms of the LMRA, does not furnish an independent basis for federal court jurisdiction.

*Id.* at 306.

Plaintiffs in the present case do not assert that any structural defect exists in either the ROU Plan or the ARA Plans,[4] or that the trustees of any of these plans have adopted arbitrary or capricious regulations. Moreover, as stated above, T.I.M.E. itself is not a Section 302(c)(6) trust, but is simply an organization founded by the Contracts to provide training services to such trusts.

The facts of this case are even less conducive to finding jurisdiction under Section 302 than those presented in *Franco* and *Ader*. Here, resolution of plaintiffs' central claim calls only for construction under state law of the terms of the Contracts entered into by the ROU Plan and the ARA Plans. No issue of federal statutory interpretation is involved. Therefore, Section 302 (e) does not confer jurisdiction over plaintiffs' action.

### D. *ERISA.*

█ Defendants also claim that jurisdiction exists over the claims asserted by plaintiffs under Section 502 of ERISA, 29 U.S.C. § 1132(a), (e). Section 502 empowers participants, beneficiaries and fiduciaries of benefit trust plans to bring actions to recover benefits under the terms of such plans or to redress violations of ERISA by trustees

---

4. It is questionable whether plaintiffs would have standing to assert such a claim with respect to the ARA Plans. *See Hibernia Bank v. International Brotherhood of Teamsters*, 411 F.Supp. 478, 486–88 (N.D.Cal.1976) (bank injured by alleged fiduciary violations by pension fund trustees has no standing to assert violations of Section 302 by trustees).

of the plans.[5] However, the plaintiffs in this case are neither "participants" nor "beneficiaries" of the ARA Plans, as those terms are defined in Section 3 of ERISA, 29 U.S.C. § 1002(7)–(8).[6] *See National Bank of North America v. Local 553 Pension Fund*, 463 F.Supp. 636, 638 n. 2 (E.D.N.Y. 1978) (standing under Section 502 carefully restricted to employee beneficiaries and designated participants; judgment creditor of employee-beneficiary has no standing to sue under Section 502); *Francis v. United Technologies Corp.*, 458 F.Supp. 84, 87 (N.D. Cal.1978) (narrow definition of term "participant"); *Wong v. Bacon*, 445 F.Supp. 1177, 1183 (N.D.Cal.1977) (employers who contribute to pension fund cannot sue under Section 502); *Hibernia Bank v. International Brotherhood of Teamsters, supra*, 411 F.Supp. at 489 (bank which allegedly sustained losses due to breaches of fiduciary duties by trustees of union trust funds is not "beneficiary" of fund). Moreover, plaintiffs do not hold any fiduciary responsibilities with respect to the ARA Plans.[7] *See Fremont v. McGraw-Edison Co.*, 460 F.Supp. 599 (N.D.Ill.1978) (trustees of employee trust funds are fiduciaries for purposes of ERISA); *Wong v. Bacon, supra* at 1184–85 (trustees of pension fund are fiduciaries); *Marshall v. Snyder*, 430 F.Supp. 1224, 1230–31 (E.D.N.Y.1977), *aff'd in part and remanded*, 572 F.2d 894 (2d Cir. 1978) (same); *Hibernia Bank v. International Brotherhood of Teamsters, supra* at 489 (bank which advised and holds funds for union pension plan is not "fiduciary" since it retains no discretionary authority with respect to union funds). In this case, as in *Hibernia Bank*, plaintiffs are not trustees and do not hold any discretion with respect to management of the ARA Plans.

Even if defendants succeeded in demonstrating that plaintiffs were eligible to bring suit, jurisdiction still would not exist under Section 502 of ERISA, since plaintiffs are not seeking redress for any violation of ERISA. Plaintiffs do not allege that defendants have withheld benefits to any employee covered by ARA collective bargaining agreements. Furthermore,

---

**5.** Section 502 of ERISA provides in pertinent part:

> (a) A civil action may be brought—
> (1) by a participant or beneficiary—
> .  .  .  .  .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by  .  .  .  a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations of (ii) to enforce any provisions of this subchapter or the terms of the plan  .  .  ..

29 U.S.C. § 1132(a). Section 409 of ERISA provides in part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach  .  .  .  and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.  .  .  .

29 U.S.C. § 1109(a).

**6.** Sections 3(7) and 3(8) of ERISA define the terms "beneficiary" and "participant" as follows:

> (7) The term "participant" means any employee or former employee of an employer or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
> (8) The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(7)–(8).

**7.** Section 3(21)(A) of ERISA provides in pertinent part:

> (21)(A)  .  .  .  [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,  .  .  .  (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  .  .  .

plaintiffs do not claim that defendants have breached any fiduciary duty to the ARA Plans. Although plaintiffs do contend that the ARA Plans have mismanaged the T.I. M.E. program in violation of the Contracts, this mismanagement cannot give rise to a violation of ERISA since, as defendants apparently concede, T.I.M.E. is not a trust and is not regulated under ERISA. The resolution of plaintiffs' claims depends solely on construction of the Contracts under state law, and does not call for interpretation of duties or obligations imposed by ERISA. Therefore, defendants' effort to bottom federal jurisdiction over this case on ERISA must fail.

E. *Conclusion.*

Since no basis exists for the exercise of jurisdiction over plaintiffs' claims by this court, the motion to remand is granted. Plaintiffs shall, within ten days hereof, submit an order on notice consistent with this opinion.

IT IS SO ORDERED.