72 F.3d 1396
 64 USLW 2410, 19 Employee Benefits Cas. 2494,
95 Cal. Daily Op. Serv. 9859,
95 Daily Journal D.A.R. 17,163,
Pens. Plan Guide P 23915O
 PILKINGTON PLC; Pilkington Visioncare, Inc.; Pilkington
Visioncare Pension Plan, Plaintiffs-Appellants,
v.
Ronald O. PERELMAN; Howard Gittis; Jewel S. LaFontant;
Bruce Slovin; Fred R. Sullivan; Pierre A.
Rinfret; Revlon, Inc., Defendants-Appellees.
 No. 93-55573.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 12, 1994.
Decided Dec. 27, 1995.
 
 Janis L. Harwell and M. Scott Donahey, Holtzmann, Wise & Shepard, Palo Alto, California, for plaintiffs-appellants.
 Frank Rothman, Harriet S. Posner, Kenneth A. Ostrow, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, California, for defendants-appellees.
 Lauren M. Serper, United States Department of Labor, Washington, D.C., for amicus curiae.
 Appeal from the United States District Court for the Central District of California.
 Before: FEINBERG,* SCHROEDER, and KOZINSKI, Circuit Judges.
 Opinion by Judge SCHROEDER; Dissent by Judge KOZINSKI.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is a suit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001, et seq. ("ERISA"), claiming damages for alleged breaches of fiduciary duties imposed by the Act. Plaintiffs include Pilkington, a British corporation that purchased the "Visioncare" companies from the defendant Revlon corporation; Pilkington's American subsidiary, Pilkington Visioncare, Inc., which now operates these companies and administers their pension plan; and the Pilkington Visioncare Pension Plan, an ERISA plan. Plaintiffs sued the trustees of their predecessor plan to recover damages representing benefits owed to Visioncare employees under their ERISA plan. The defendants are the Revlon Corporation and its various officers who were trustees of the predecessor Revlon ERISA plan. Plaintiffs seek to recoup in this action benefit payments that represent obligations to former Revlon employees that Pilkington inherited when it purchased Revlon's subsidiary Visioncare companies. The annuity provider, Executive Life Insurance Company, chosen by the defendants, never paid the plan beneficiaries the benefits owed to them under the plan because Executive Life defaulted on its annuity contract. Pilkington Visioncare and the Visioncare Pension Plan made up the shortfall in Executive Life's payments by making direct payments to the Plan beneficiaries. Plaintiffs claim that the payments were necessitated by defendants' earlier breaches of fiduciary duty to the predecessor plan.
 
 
 2
 The district court granted the defendants' motion for summary judgment on the ground that the plaintiffs lacked standing under ERISA to sue the trustees of the predecessor Revlon plan. The district court recognized that 29 U.S.C. Sec. 1132(a) of ERISA grants standing to "fiduciaries" but held that such standing exists to sue only other fiduciaries of the same plan, not fiduciaries of any other plan, even fiduciaries of a predecessor plan. As an alternative ground for its grant of summary judgment, the district court held that even if plaintiffs had standing under ERISA, the defendants were entitled to summary judgment on the merits because there was no genuine issue of material fact and, as a matter of law, defendants had not breached any fiduciary duties.
 
 
 3
 Revlon chose Executive Life to fund an annuity contract when Revlon decided in 1985 to terminate or "spin-off" its over-funded pension plan. The spin-off was accomplished by purchasing an annuity contract intended to cover the obligations to the Revlon plan participants and beneficiaries. The Department of Labor has appeared amicus curiae in this action because the Secretary is plaintiff in a number of other actions seeking to recover benefits for beneficiaries of plans damaged by Executive Life's collapse. In this case, the principal claim on the merits is that the defendant trustees of Revlon breached their fiduciary duties when they chose Executive Life as the annuity contract provider.
 
 
 4
 We hold that the plaintiff fiduciaries of the Pilkington Visioncare Pension Plan have standing to pursue this action against the predecessor plan's fiduciaries whose alleged violations of duty caused plaintiffs' plan to suffer losses. We reverse on the merits because there exist genuine issues of material fact as to whether defendants breached their fiduciary duties under ERISA.
 
 I. BACKGROUND
 
 5
 In December of 1985, shortly after a hostile takeover of Revlon, Revlon's Board of Directors decided to terminate the company's pension plan by purchasing an annuity contract to cover the pension benefits owed to Revlon's plan participants and beneficiaries. At the time, the plan covered the employees of Revlon's subsidiaries and affiliated companies. Containing nearly $200 million in assets, the plan was over-funded. Under the new Revlon plan, the same employees were to be covered and provided with the same benefits, through the annuity purchase.
 
 
 6
 Revlon solicited bids as part of its annuity selection process, aided by Hewitt Associates, an actuarial consulting firm. Before inviting bids from a spectrum of insurance carriers, Revlon asked Executive Life to submit a price quote for the annuity contract. Revlon made an advance, refundable deposit of $18 million toward the purchase of an Executive Life contract prior to the official opening of the bidding process to other insurance carriers. Of the four carriers that eventually submitted bids, Executive Life submitted the lowest by over $13 million. All four carriers that submitted bids were rated AAA or A+ by Standard & Poors and A.M. Best, respectively. Revlon chose to purchase Executive Life's annuity at its $85 million bid price, which resulted in a reversion of the remainder $100+ million in plan assets to Revlon.
 
 
 7
 In September 1987, Pilkington, a British corporation, purchased the "Visioncare" companies from Revlon. Pilkington's American subsidiary, Pilkington Visioncare, Inc., now operates these companies. Prior to the sale, the Visioncare employees were covered by Revlon's new, post-spin-off pension plan.
 
 
 8
 As part of the Pilkington/Revlon transaction, the new Revlon plan was to transfer a "paid up annuity contract" to the Visioncare Pension Plan to cover pension liability related to Visioncare employees. By the time Revlon tendered the certificates of insurance, Executive Life was in default on the annuity contract and collapsed soon thereafter.
 
 
 9
 Plaintiffs alleged in their complaint that by selecting Executive Life, Revlon violated its twin duties of prudence and loyalty owed to plan beneficiaries and participants under ERISA. See 29 U.S.C. Sec. 1104(a)(1)(A). The issues on appeal center on (1) whether plaintiffs have standing under ERISA to sue the fiduciaries of the predecessor Revlon plan and (2) if so, whether the district court properly granted defendants summary judgment on the merits.
 
 II. STANDING
 
 10
 The first issue on appeal is whether any of the plaintiffs have standing to sue the defendants for the asserted violations of fiduciary duty ERISA imposed upon the defendants who were fiduciaries of the predecessor Revlon plan. The plaintiffs include fiduciaries of the Pilkington Visioncare Pension Plan who succeeded to all of the assets and liabilities of the Revlon plan. The plaintiffs assert that the defendants' bad judgment, fueled by greed, drove the selection of Executive Life as the carrier. The plaintiffs ground their standing upon 29 U.S.C. Sec. 1132(a), which expressly authorizes suits to enforce ERISA's provisions to be brought by fiduciaries as well as three other classifications of persons: participants, beneficiaries, and the Secretary of Labor.[1]
 
 
 11
 The district court held that none of the plaintiffs had standing. It did so on the principal ground that ERISA authorizes suits by fiduciaries only against other fiduciaries of the same plan, and therefore does not authorize fiduciaries to sue fiduciaries of a predecessor plan. The defendants-appellees urge such a limitation should apply even in a case like this, in which the predecessor fiduciaries are alleged to have caused injury to the plan that plaintiffs administer. The statute does not contain any express limitation on suing fiduciaries of other plans, and applying such a limitation in this case could hardly further Congress' intent to impose strict fiduciary duties on administrators of ERISA plans. See 29 U.S.C. Sec. 1001(b); Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) (ERISA imposes "strict standards" of loyalty and care on plan fiduciaries). If we were to read such a limitation into the statute, we would hold, in effect, that fiduciaries can insulate themselves from liability for breaches of substantive statutory obligations by effecting a spin-off, merger, or other formal change of the trust entity.
 
 
 12
 To support their argument against standing, the defendants contend we are controlled by a tenet of the Supreme Court's opinions in Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), and Franchise Tax Bd. v. Constr. Laborers Vac. Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The Supreme Court in those cases held that both the remedies created by ERISA and the parties expressly authorized to seek them were exclusive. See Massachusetts Mutual, 473 U.S. at 146, 105 S.Ct. at 3092; Franchise Tax Bd., 463 U.S. at 27, 103 S.Ct. at 2855-56. The Court described the enforcement provisions in Sec. 1132 as "carefully integrated," and gave close consideration to ERISA's "interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.' " Massachusetts Mutual, 473 U.S. at 146, 105 S.Ct. at 3092 (quoting Nachman Corp. v. Pension Ben. Guaranty Corp., 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980)). In Franchise Tax Board, the Court stated that
 
 
 13
 ERISA carefully enumerates the parties entitled to seek relief under [Sec. 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action....
 
 
 14
 Franchise Tax Bd., 463 U.S. at 27, 103 S.Ct. at 2855. The Supreme Court decisions on which defendants rely, however, do not address the issue in this case, i.e., whether the authorization for suits by "fiduciaries" encompasses suits against predecessor fiduciaries. No Supreme Court authority bars the door to this lawsuit.
 
 
 15
 The three lower court cases cited by the district court in its opinion are urged again by appellees on appeal. See Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 154 (3rd Cir.1985); Modern Woodcrafts, Inc. v. Hawley, 534 F.Supp. 1000, 1014 (D.Conn.1982); Smith v. Hickey, 482 F.Supp. 644 (S.D.N.Y.1979). These cases do not in fact support the appellees' theory that the statute bars suits against fiduciaries of a predecessor plan. Indeed, the Third Circuit in Northeast unanimously held that a suit brought by fiduciaries of one plan against fiduciaries of another plan could go forward. The case involved a dispute as to which of two plans, the husband's plan or the wife's plan, owed benefits to a beneficiary, the couple's retarded child. One plan paid the benefits and looked to the other plan for recovery. In holding that the suit could go forward, a majority of the panel did not agree with one panel member's view that the suit was authorized under Sec. 1132(a). Northeast, 764 F.2d at 154. The two judges in the majority instead offered two theories of why 28 U.S.C. Sec. 1331 supported federal common law standing. Id. at 157. But the entire panel agreed that the suit could be maintained in order to further Congress' intent to establish and enforce fiduciary responsibilities. Id. at 158 (stating that resolution of case will effect "the interests of benefit trust funds, the solvency of which was a matter of serious congressional concern").
 
 
 16
 In Modern Woodcrafts, Inc. v. Hawley, 534 F.Supp. 1000, 1014 (D.Conn.1982), plaintiffs were employers and trustees of a new pension plan and sued fiduciaries of a state-wide plan from which the plaintiff employers had previously withdrawn. Significantly, the defendants had not caused any injury to the plaintiffs' new plan. The court in Modern Woodcrafts reasoned that ERISA does not authorize fiduciaries to sue other fiduciaries unless the defendants' alleged breach of duty caused injury to plaintiffs' plan:
 
 
 17
 [I]n order to have standing to sue under ERISA as a 'fiduciary,' ... a party must be (or have been) not merely a fiduciary of any ERISA plan, but rather, a fiduciary of the particular ERISA plan victimized by the alleged breach of fiduciary duty.
 
 
 18
 Id. at 1014. In support of that proposition, the Modern Woodcrafts court cited Smith v. Hickey, 482 F.Supp. 644, 650 (S.D.N.Y.1979) (plaintiff fiduciaries of ROU Plan lacked standing as "fiduciaries" under ERISA to sue fiduciaries of defendant ARA Plans because plaintiffs held no discretion with respect to management of ARA Plans).
 
 
 19
 Here, plaintiff fiduciaries are suing fiduciaries of the plan that the defendants allegedly victimized. Upon purchase of the Visioncare companies, plaintiffs inherited any injuries that had been sustained by Revlon's post-spin-off plan. In fact, the Visioncare plan effectively is the new Revlon plan in another mantle, created by Revlon's sales of its subsidiary Visioncare companies to Pilkington. Under the sound reasoning of Modern Woodcrafts, the plaintiffs have standing as fiduciaries under 29 U.S.C. Sec. 1132(a).
 
 
 20
 Several of the cases relied upon by the appellees in their brief to this court are fully consistent with our holding today. In Molnar v. Wibbelt, 789 F.2d 244 (3rd Cir.1986), the Third Circuit permitted the trustees of a group of successor pension funds to sue to compel the fiduciary of a predecessor fund to turn over books and records to the plaintiffs' successor funds. Id. at 249. That holding supports ours. Addressing a different claim, the Third Circuit did not permit a counterclaim by fiduciaries of the defunct plan to be maintained against fiduciaries of the new, post-merger plan because the former were "not participants, beneficiaries, or fiduciaries of any of the new benefit funds" under Sec. 1132(a). Id. at 250. That ruling does not conflict with ours.
 
 
 21
 In Lee v. Prudential Ins. Co. of America, 673 F.Supp. 998 (N.D.Cal.1987), plaintiff, a participant and beneficiary of one plan, sued to remedy breaches of fiduciary duty to participants and beneficiaries of other plans. The court held plaintiff had no standing to seek to remedy those breaches, citing ERISA's legislative history suggesting "that Congress intended breach of fiduciary duty claims against only the plan under which participants suffered from the breach." Id. at 1004 (citing H.R.Conf.Rep. No. 1280, 327, 93rd Cong., 2nd Sess. (1974)). We agree with the court's reasoning in Lee. Here, in contrast to the situation in Lee, the plaintiffs are suing on behalf of the very plan that bore the brunt of defendants' alleged breaches of fiduciary duty.
 
 
 22
 Defendants' reliance on Mertens v. Hewitt Associates, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), is misplaced. The Court there considered a suit by beneficiaries against a non-fiduciary for allegedly assisting fiduciaries in defrauding plaintiffs' plan. The Court held that the plaintiffs were entitled only to equitable remedies, and not money damages, when pursuing a claim against nonfiduciaries as opposed to a claim against fiduciaries. Id. at ---- - ----, 113 S.Ct. at 2067-68. The case fully supports the proposition that defendant fiduciaries are accountable in money damages for their defalcations.
 
 
 23
 The Seventh Circuit has reached farther than we need hold today. It held in Winstead v. J.C. Penney, Co. Inc., 933 F.2d 576 (7th Cir.1991), that the provisions of Sec. 1132(a) authorize fiduciaries of one plan to sue fiduciaries of another, unrelated plan, in a situation similar to that which confronted the Third Circuit in Northeast. The Seventh Circuit reasoned that where the operation of one plan interlocks with the operation of the plaintiffs' plan, Sec. 1132(a) must provide plaintiff fiduciaries standing to enforce the proper operation of their own plan under ERISA.
 
 
 24
 The [plaintiff] trustees are fiduciaries, and while there is a sense in which they are suing to enforce the [defendants'] plan, there is an equally good sense in which they are suing to enforce their own plan. To enforce is to effectuate.
 
 
 25
 Id. at 579. The reasoning of Winstead applies with even greater force to this case, where defendants' plan was not an unrelated plan merely linked to plaintiffs' plan by a coordination-of-benefits clause, but was the predecessor of plaintiffs' plan.
 
 
 26
 The Secretary of Labor in its amicus brief has cited to the weight of authority supporting beneficiaries' suits against fiduciaries of predecessor plans. See Bigger v. American Commercial Lines, Inc., 652 F.Supp. 123 (W.D.Mo.1986), aff'd, 862 F.2d 1341 (8th Cir.1988) (in pension plan spin-off in which plan assets were transferred from parent plan to newly created plan, former participants of parent plan had standing under 29 U.S.C. Sec. 1132(a) to maintain suit against parent plan, its trustees and its corporate sponsors to seek remedies to protect financial integrity of new plan); Bass v. Retirement Plan of Conoco, Inc., 676 F.Supp. 735, 741 (W.D.La.1988) (former employees had standing to bring ERISA suit against predecessor company, plan and its trustees for breach of fiduciary duties involving the transfer of assets from predecessor plan to successor plan). These situations are analogous to the instant one. There is no more reason to insulate predecessor fiduciaries from ERISA suits by successor fiduciaries than there is to insulate them from suits by successor beneficiaries. As in Winstead, this reading of ERISA's standing provision "makes most sense in terms of promoting the goals of ERISA and, more broadly, of facilitating the expeditious and economical administration of justice." Winstead, 933 F.2d at 579.
 
 
 27
 Indeed Congress, after argument in this case, amended Sec. 1132 to authorize a suit by a fiduciary to secure relief in the event that an annuity purchase results in a violation of duties imposed by ERISA or the plan. See 29 U.S.C. Sec. 1132(a)(9); P.L. No. 103-401, 108 Stat. (1994 U.S.C.C.A.N.) 4172. The change is retroactive. See P.L. No. 103-401, Sec. 5, 108 Stat. (1994 U.S.C.C.A.N.) 4172, 4173. The amendment adds the following language as a new subsection 9 in the list of persons authorized to bring a civil action:(9) in the event that the purchase of an insurance contract or insurance annuity in connection with termination of an individual's status as a participant covered under a pension plan with respect to all or any portion of the participant's pension benefit under such plan constitutes a violation of part 4 of this subtitle or the terms of the plan, by the Secretary, by any individual who was a participant or beneficiary at the time of the alleged violation, or by a fiduciary, to obtain appropriate relief, including the posting of security if necessary, to assure receipt by the participant or beneficiary of the amounts provided or to be provided by such insurance contract or annuity, plus reasonable prejudgment interest on such amounts.
 
 
 28
 This amendment authorizes a suit like this one.
 
 
 29
 We therefore hold that Sec. 1132(a) authorizes plaintiff fiduciaries of the Visioncare Pension Plan to bring suit against the fiduciaries of the predecessor Revlon plan. In so holding, we do not rely upon this court's earlier decision in Fentron Industries, Inc. v. Nat'l Shopmen Pension Fund, 674 F.2d 1300 (9th Cir.1982), in which we held that the categories of persons authorized to sue under Sec. 1132 are not exclusive. As we recognized in Cripps v. Life Ins. Co. of North America, 980 F.2d 1261 (9th Cir.1992), Fentron has been largely undermined by subsequent Supreme Court authority. Cripps, 980 F.2d at 1265 (citing Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1983) and Franchise Tax Bd. v. Constr. Laborers Vac. Trust, 463 U.S. 1, 27, 103 S.Ct. 2841, 2855-56, 77 L.Ed.2d 420 (1983)).
 
 III. MERITS
 
 30
 As an alternative holding, the district court granted the defendants' motion for summary judgment on the merits, ruling that no genuine issue of material fact existed as to the reasonableness of the defendants' conduct and that defendants did not, as a matter of law, breach any fiduciary duty owed to the Revlon plan. We reverse this holding as well, because the record raises serious issues of fact as to the reasonableness of the defendants' conduct.
 
 
 31
 In support of their decision to choose Executive Life as the spin-off's annuity provider, the defendants contend that they reasonably relied upon the ratings of Standard & Poors and A.M. Best and chose the lowest bidder. Legal authority does not support their contention that a mere ratings scan satisfied their fiduciary duty of loyalty to the plan. See Leigh v. Engle, 727 F.2d 113, 126 (7th Cir.1984) ("[W]hether fiduciaries with devoted loyalties make an intensive and scrupulous investigation of the plans' investment options may be highly probative of the fiduciaries' loyalties."), cert. denied, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989). In addition, there is evidence that some voices in the insurance industry had expressed misgivings about the soundness of those ratings at the time of the spin-off. ERISA's command to fiduciaries is unequivocal: fiduciaries must act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. Sec. 1104(a)(1)(A)(i) (emphasis added).
 
 
 32
 Appellants claim that Revlon's loyalty is brought into question by the financial reality of the Executive Life annuity purchase. By purchasing the annuity contract from Executive Life, the lowest bidder by more than $13,000,000, more funds reverted to Revlon. The district court was presented with strong evidence that reversion maximization figured prominently in Revlon's spin-off/plan termination decision. Because the Revlon trustees' motivation may have deviated from that mandated by ERISA, summary judgment on the merits was improper. See Cooke v. Lynn Sand & Stone Co., 673 F.Supp. 14, 24 (D.Mass.1986) ("At a minimum, a jury could reasonably find that the trustees ... violated their fiduciary duties to the participants and their beneficiaries by attempting to maximize the amount which would revert to [defendants] by minimizing the benefits paid to the participants."). Other cases have made clear that pension plan trustees' conflicts of interest can violate ERISA's loyalty requirement. See Leigh, 727 F.2d at 125 ("Where the potential for conflicts is substantial, it may be virtually impossible for fiduciaries to discharge their duties with an 'eye' to the interests of the beneficiaries and the fiduciaries may need to step aside, at least temporarily, from the management of assets where they face potentially conflicting interests."); Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir.) (Pension plan trustees' "decisions must be made with an eye single to the interests of the participants and beneficiaries.") (emphasis added), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).
 
 
 33
 Moreover, the district court engaged in fact finding when it held that no evidence had been presented that the trustees were motivated by economic self-interest. The district court concluded:
 
 
 34
 Plaintiffs argue that there was a conflict of interest because Revlon had taken on a large amount of debt and in choosing an insurance carrier, they were more concerned with getting the lowest bid to retain money to pay down the debt than they were in choosing the safest insurance carrier.... Revlon had more than $1.4 billion in debts. The difference in prices between the insurance carriers' bids was [approximately $13] million. It is unlikely that this was ... an 'inappropriate factor' that drove defendants' decision-making process.
 
 
 35
 Order at 15. By assessing appellees' state of mind, and finding appellants' claim of improper motivation "unlikely," the district court improperly resolved a contested issue of fact. Summary judgment was not appropriate.
 
 
 36
 Finally, the record reflects that one factor behind Executive Life's demise was its heavy purchase of junk bonds, including Revlon's own junk bonds. If so, the defendants, as officers of Revlon, may have had actual notice of those purchases and known of the insecurity of the carrier's investments.
 
 
 37
 The judgment of the district court granting the defendants summary judgment is REVERSED AND the case REMANDED FOR FURTHER PROCEEDINGS.
 
 KOZINSKI, Circuit Judge, dissenting:
 
 38
 The Visioncare Pension Plan sues for a breach of fiduciary duty that supposedly occurred when fiduciaries of the Revlon Plan bought an unsafe annuity to cover benefits it owed the Revlon Plan's own beneficiaries. Like the common law, ERISA allows fiduciaries to sue their predecessors or cofiduciaries for breach of trust. But Revlon was never a predecessor fiduciary, a co-fiduciary, or any other kind of fiduciary of the Visioncare Plan; it never owed fiduciary duties to that plan's beneficiaries. It's black letter law (adopted by ERISA) that "fiduciary duty" and "fiduciary breach" only have meaning in the context of a fiduciary relationship. See 1 Austin W. Scott & William F. Fratcher, The Law of Trusts Sec. 2.5, at 43 (4th ed. 1987); see also Central States, S.E. & S.W. Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) (ERISA incorporates common law of trusts). There's no such thing as a fiduciary-at-large, someone who can be sued by anyone and everyone for a breach of duty; a fiduciary can be sued only by a beneficiary or another fiduciary of the trust that creates the duty. See Restatement (Second) of Trusts Sec. 200 & cmt. a. The Revlon Plan and the Visioncare Plan had many of the same participants, but nothing before us--no trust instrument, no contract, no statute, no regulation--makes Revlon a fiduciary of the Visioncare Plan. For me, that's the end of the case; the majority's efforts to fill this void leave me unmoved.
 
 
 39
 The majority argues that "the Visioncare plan effectively is the new Revlon plan in another mantle." Op. at 1399. What does this mean? If the majority is saying that the Visioncare Plan is the same entity as the Revlon Plan, it's mistaken. Its assertion that the "fiduciaries of the Pilkington Visioncare Pension Plan ... succeeded to all of the assets and liabilities of the Revlon Plan," id. at 1398, is simply wrong. CR 45 at 96-97. The contract by which Pilkington bought Visioncare required it to set up a new, independent pension plan that would mimic Revlon Plan benefits for the transferred employees; this became the Visioncare Plan. Id. The Revlon Plan continues to this day and is, in fact, a party to this lawsuit.
 
 
 40
 If, on the other hand, the majority is merely pointing out that the Visioncare Plan took over the Revlon Plan's responsibilities vis-a-vis certain former Revlon employees, that's true enough, but not nearly sufficient to establish a fiduciary relationship between Visioncare and Revlon. Fudge words like "effectively" and "in another mantle" mask that the Visioncare Plan is an entity separate from the Revlon Plan, created for the very purpose of relieving the Revlon Plan of responsibility to outgoing employees. The Visioncare Plan is thus a third party beneficiary of the contract between Pilkington and Revlon--no more, no less.
 
 
 41
 The majority tries to ford the fiduciary duty gap by claiming the Visioncare Plan "bore the brunt of [Revlon's] breaches of fiduciary duty" to the Revlon Plan.Op. at 15898. I don't see the point. If Revlon fiduciaries violated a fiduciary duty to the Revlon Plan, those associated with the plan can sue for the breach. Other victims of the same conduct, such as plaintiffs here, can't sue for breach of a fiduciary duty not owed to them. Visioncare in fact sued for breach of contract, and later dropped the claim, CR 43, presumably pursuant to settlement. It might also have a fraud claim. But it has no claim for breach of trust.
 
 
 42
 Still, the majority argues, plaintiffs must be given standing, lest there be no one left to remedy this breach. Op. at 1398-99. The concern is puzzling as there's no shortage of people with standing to sue. For example, Visioncare employees previously covered by the Revlon Plan can sue their former fiduciaries, claiming a breach in putting them into an underfunded plan. See 29 U.S.C. Secs. 1058, 1132(a)(2), (a)(9), ERISA Secs. 208, 502(a)(2), (a)(9); Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1454-55 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995). The Secretary of Labor also has standing, ERISA Sec. 502(a)(2), and isn't known for his timidity in bringing suit, see, e.g., Reich v. King, 867 F.Supp. 341 (D.Md.1994) (harassing faithful fiduciary for no particular reason). In fact, the Secretary has already sued several times for the very breach alleged here. See Br. Amicus Curiae at 2 (listing, as of September 1993, six suits against fiduciaries that purchased Executive Life annuities for other pension plans).
 
 
 43
 Small wonder that the beneficiaries and the Secretary haven't sued here: The beneficiaries have suffered no harm, as they have apparently been paid in full. The Visioncare Plan is obligated to pay the benefits, Pilkington must stand behind that obligation, and there's no indication that either the pension plan or Pilkington won't be good for it. A potential injury not likely ever to materialize gives the beneficiaries and the Secretary little incentive to act. Plaintiffs are clearly eager to sue, as they're on the hook for any shortfall left by Executive Life, but zeal alone doesn't confer standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
 
 
 44
 The majority also believes new ERISA section 502(a)(9) "authorizes a suit like this one." Op. at 1401. The new provision does no such thing. As we noted in Kayes, it was passed in response to court decisions that had denied former ERISA plan beneficiaries standing to sue their former fiduciaries for breaches committed in closing out their plans. 51 F.3d at 1454-55 & n. 4. The new provision merely clarified existing law (with the exception of a few disapproved decisions) and didn't enlarge the universe of people who have standing to sue for breach of trust. Id. Like the other standing provisions in section 502, the recent amendment gives standing to "a fiduciary" without elaboration; it doesn't answer the question here: Which fiduciary?
 
 
 45
 In addition to being wrong, the majority creates an unacknowledged conflict with Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147 (3d Cir.1985). NE ILGWU considered the standing of one ERISA plan's fiduciary, under a fiduciary standing provision identical to the one at issue, to enforce the terms of another ERISA plan with which it shared a beneficiary. As the majority notes, the Third Circuit held that the "suit ... could go forward." Op. at 1399. But it reached this result on a theory with no application to this case, after holding that section 502 doesn't give the fiduciary of one plan standing to sue another. See id.
 
 
 46
 "[W]e have adopted a cautionary rule, counseling against creating intercircuit conflicts." In re Taffi, 68 F.3d 306, 308 (9th Cir.1995). Where we do differ with a sister circuit, we should do so openly and explain our reasons for parting ways. Handing Pilkington its toasted chestnuts isn't a good enough reason.
 
 
 
 *
 Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 29 U.S.C. Sec. 1132(a) states in relevant part:
 A civil action may be brought--
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title ["Breach of Fiduciary Duty"];
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....
 29 U.S.C. Sec. 1132(a)(2) & (3) (Civil enforcement--persons empowered to bring a civil action).